CHRISTINE E. KIRK, Plaintiff-Appellant, *v.* FINANCIAL SECURITY LIFE INSURANCE COMPANY, Defendant-Appellee.

Fourth District    No. 14365

Opinion filed November 1, 1977.

GREEN, P. J., concurring.
WEBBER, J., dissenting.

W. J. Simhauser, of Springfield, for appellant.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow, of counsel), for appellee.

Mr. JUSTICE REARDON delivered the opinion of the court:

As is typical in appeals from dismissal pursuant to section 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48), we will in the instant case follow the rule that uncontested, well-pleaded allegations of fact shall be, for the purposes of review, deemed to be true. *Bulk Terminals Co. v. Environmental Protection Agency* (1976), 65 Ill. 2d 31, 37, 357 N.E.2d 430, 432.

The plaintiff, Christine E. Kirk, is the beneficiary of an insurance policy issued by the defendant, Financial Security Life Insurance Company, which insured the life of her now-deceased husband, John W. Kirk. Under the caption "MULTIPLE ACCIDENTAL DEATH BENEFIT," the policy contained an increased or double indemnity provision which stated:

"ACCIDENTAL DEATH BENEFIT. The Company, while this policy is in full force and effect, other than under the nonforfeiture

provisions, WILL PAY an Accidental Death Benefit to the Beneficiary upon receipt at its Home Office of due proof of the accidental death of the Insured which directly shows the accidental death occurred; (1) death resulted directly and solely from an accidental bodily injury, and (2) death occurred within ninety (90) days after the bodily injury, and (3) both the injury and death occurred while this policy was in full force and effect.

The Multiple Accidental Death Benefit will be payable in addition to the Face Amount and will be: DOUBLE INDEMNITY, an amount equal to the Face Amount, or TRIPLE INDEMNITY, an Amount equal to twice the Face Amount if the required due proof also shows that the accidental injury was sustained while he was a fare-paying passenger in or upon a public conveyance operated by a common carrier for passenger service. Any amount payable under the Accidental Death Benefit as either Double, or Triple Indemnity upon the death of the Insured shall be reduced by any amount paid or payable under 'Benefit for Loss of Insured's Hands or Feet or Sight' as a result of the same accident, but in no event shall the amount payable hereunder for death benefits be less than the face amount.

The Accidental Death Benefit will be payable in one sum unless otherwise provided by written notice from the Beneficiary.

ACCIDENTAL DEATH DEFINED. The phrase 'Accidental Death' means death resulting directly and solely from, (1) an accidental injury visible on the surface of the body or disclosed by an autopsy, or (2) a disease or infection resulting directly from an accidental injury described and beginning within ninety (90) days after the date of the injury, or (3) an accidental drowning."

On January 26, 1974, while the insurance contract was alleged to be in full force and effect, the insured was involved in an automobile accident which severely injured him. The insured was subsequently placed in the intensive care unit of the University Hospital in Jackson, Mississippi, where he underwent two surgical operations and where extraordinary measures were taken to prolong his life. The insured remained at the hospital until April 28, 1974, the date of his death. The date of death was on the 92nd day following the automobile accident which the plaintiff has alleged to be the direct and proximate cause of death.

After unsuccessfully demanding that defendant pay benefits under the double indemnity clause quoted above, plaintiff filed the instant action on January 20, 1976, alleging that the 90-day restriction contained in the clause violated the public policy of Illinois. After defendant filed a motion to dismiss under section 48 of the Civil Practice Act (Ill. Rev. Stat. 1975, ch. 110, par. 48), the court dismissed the complaint while granting

plaintiff leave to file an amended complaint. On July 12, 1976, that amended complaint was filed but, in response to another motion to dismiss, the court orally dismissed the action on November 18, 1976. A written order to that effect was entered on February 8, 1977.

■■ On appeal, the plaintiff alleges: (1) that the 90-day limitation period contained in the double indemnity clause violates the public policy of Illinois; and (2) that the policy's definition of accidental death is ambiguous, uncertain and incapable of being applied against the plaintiff.

Owing to the fact that we are reviewing a dismissal pursuant to section 48 of the Civil Practice Act, we are not reviewing an issue concerning the causative factor involved in the insured's death. Rather, the scope of this opinion is limited solely to the question of whether the 90-day limitation clause contained in the instant contract violates this State's public policy. Our research has disclosed no Illinois case holding that the 90-day limitation period which is commonly included in double indemnity clauses is against the public policy of this State. Our attention has been directed, however, to *Burne v. Franklin Life Insurance Co.* (1973), 451 Pa. 218, 301 A.2d 799, wherein the Pennsylvania Supreme Court held that a similar 90-day limitation violated that State's public policy and was unenforceable in circumstances where no question existed as to the insured's cause of death. See Note, *Death be not Proud-The Demise of Double Indemnity Time Limitations* (1974), 23 DePaul L. Rev. 854; but see Annot., 39 A.L.R. 3d 1311 (1971).

The facts of *Burne* can be briefly stated. The Franklin Life Insurance Company issued a policy bearing a $15,000 face amount to Bartholomew Burne in 1949. A double indemnity rider providing for an additional accidental death benefit of $15,000 was attached to the policy, but the rider stated that the benefit would only be payable if death occurred within 90 days of an accident. The insured was accidentally struck by an automobile in North Miami, Florida, on January 30, 1957, and, although he suffered severe brain injuries, the use of sophisticated medical equipment and techniques prolonged the insured's life for 4½ years. After the insured's death the insurer conceded that the injuries were the direct cause of death and paid the face amount of the policy. The insurer, however, denied liability under the double indemnity accidental death rider for the reason that death did not ensue within 90 days of the accident.

In ordering that a summary judgment in favor of the insurer be reversed and in directing that a summary judgment be entered in favor of the insured's beneficiary, the court stated:

> "The result reached by the trial court presents a gruesome paradox indeed—it would permit double indemnity recovery for the death of an accident victim who dies instantly or within ninety days of an

accident, but would deny such recovery for the death of an accident victim who endures the agony of prolonged illness, suffers longer, and necessitates greater expense by his family in hopes of sustaining life even momentarily beyond the ninety day period. To predicate liability under a life insurance policy upon death occurring only on or prior to a specific date, while denying policy recovery if death occurs after that fixed date, offends the basic concepts and fundamental objectives of life insurance and its [sic] contrary to public policy. Hence, the ninety day limitation is unenforceable.

* * * [T]he decisions as to what medical treatment should be accorded an accident victim should be unhampered by considerations which might have a tendency to encourage something less than the maximum medical care on penalty of financial loss if such care succeeds in extending life beyond the 90th day. All such factors should, wherever possible, be removed from the antiseptic halls of the hospital. Rejection of the arbitrary ninety day provision does exactly that.

Aside from considerations of public policy, the ninety day provision possesses no persuasive decisional support. In granting appellee's motion for summary judgment, the trial court obviously relied upon a single thirty year old case. *Sidebothom v. Metropolitan Life Insurance Co.*, 339 Pa. 124, 14 A.2d 131 (1940). That case, as well as virtually every other case which construed a ninety day limitation provision, is based on considerations which have no pragmatic applicability to the factual situation here. The earlier judicial interpretation of the ninety day provision was that its underlying purpose was to govern situations where there existed some possible uncertainty over whether injuries sustained in an accident would actually result in death. The ninety day provision attempted to delineate a line governing cases where the injuries may or may not cause death. Ninety days was the arbitrary period advanced by the carrier within which to ascertain whether death will in fact result from the accident.

The factual situation in *Sidebothom* is illustrative of the principles underlying a ninety day provision. There the insured suffered injuries from two different exposures to carbon monoxide. While in the hospital he suffered further injuries from a fall from a hospital bed. In two crucial ways that case is distinguishable from the instant one. First, the injury involved in *Sidebothom* was not the type that with any decree of certainty could be regarded as fatal. In addition *Sidebothom* presented distinct causation problems, the deceased having suffered injuries both within and without the

ninety day period. The instant case suffers from neither of these infirmities. It was clear from the moment of the accident that the husband would die as a result thereof, the only question being one of time. Nor was there any causation problem, it being conceded by the defendant that the sole cause of death was the injuries suffered by the husband when struck by the car." (451 Pa. 218, ____, 301 A.2d 799, 801-02.)

Our analysis of *Sidebothom* indicates that the thrust of that opinion relates solely to the causation problem, a problem which we have already noted has not been presented in this appeal. Because of that fundamental difference, we distinguish the decision in *Sidebothom.*

On infrequent occasions, after unsuccessfully scouring the statutes and the reporters for binding precedent on point, a court is required to resort to the vague outlines of public policy in order to do justice between the litigants before it. Some courts have defined public policy to be the "community common sense" applied to matters of public morals, health, safety, and welfare. (*E.g., Hammonds v. Aetna Casualty & Surety Co.* (N.D. Ohio 1965), 243 F. Supp. 793, 796.) In the absence of controlling legislation, a court is sometimes forced to entertain legislative considerations when it implicitly defines the scope of public policy. (Holmes, The Common Law 68 (1881).) The judiciary's wise reticence in attempting to announce on all-inclusive definition of public policy is indeed a well-settled practice—"In 23 Am. & Eng. Enc. Law (2d Ed.) p. 456, it is said: 'Public policy is in its nature so uncertain and fluctuating, varying with the habits and fashions of the day, with the growth of commerce, and the usages of trade, that it is difficult to determine its limits with any degree of exactness.' In a note to the text is a reference to a California case quoting the definition of public policy from Story on Contracts §546: 'It has never been defined by the courts, but has been left loose and free of definition, in the same manner as fraud. This rule, however, may be safely laid down, that whenever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy.' To limit the term 'public policy' within the bounds of a fixed definition would be to render evasion of the law in that respect a matter of easy invention." (*Lipscomb v. Adams* (1906), 193 Mo. 530, 542, 91 S.W. 1046, 1048.) Thus, public policy is ordinarily left for determination by the legislature and, in the absence of legislative action, it is left for determination by the judge in a proper case who in the sound exercise of his discretion can only say, "* * * I know it when I see it, * * *." *Jacobellis v. Ohio* (1964), 378 U.S. 184, 197, 12 L. Ed. 2d 793, 804, 84 S. Ct. 1676 (concurring opinion of Stewart, J.).

With that principle in mind, we will proceed with our analysis of the instant case. We agree with the *Burne* court's statement that the medical

treatment of an accident victim should be unhampered by a consideration of whether insurance benefits will be lost if the victim fortuitously survives beyond an arbitrarily selected time period. Avoidance of the risk of inducements to euthanasia, like the avoidance of the risk of inducements to murder which was discussed in *Liberty National Life Insurance Co. v. Weldon* (1957), 267 Ala. 171, 100 So. 2d 696, is of primary importance to us here.

We are not persuaded by the reasoning of *Brown v. United States Casualty Co.* (C.C.N.D. Cal. 1899), 95 F. 935, that a contract freely entered into by the parties with full knowledge of the 90-day limitation should be enforced since such a limitation is reasonable in light of experience and statistics which indicate that death, if directly and proximately caused by the accident, would normally follow within the 90-day period. Clearly, the experience and statistics alluded to in *Brown* are not persuasive to us in light of modern medical advances.

Rule 14.05(2)(b) of the Rules and Regulations promulgated by the Illinois Insurance Department currently provides that increased indemnity clauses contained in life insurance policies cannot predicate recoveries on death ensuing within less than 90 days of the accident. In *Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, the court affirmed a judgment on the pleadings in favor of the defendant while stating that a 90-day limitation was reasonable because "* * * if death does not usually result from the injuries received from an accident within ninety days therefrom, it may be reasonably ascribed to other causes prior or intervening." (180 Ill. App. 300, 303.) Similar, although less explicit language is contained in *Shelton v. Equitable Life Assurance Society* (1961), 28 Ill. App. 2d 461, 469, 171 N.E.2d 787. In view of the posture of the instant case, however, we must accept the well-pleaded allegations contained in the complaint, including plaintiff's allegation that the direct and proximate cause of insured's death was the accident of January 26, 1974. Thus, we distinguish *Clarke* and *Shelton* which, while mixing a discussion of the timeliness of death factor with a discussion of the causation factor, were primarily concerned with causation alone.

We believe that a more rational treatment of the separate timeliness and causation factors is reflected in cases like *Ebbert v. Metropolitan Life Insurance Co.* (1938), 369 Ill. 306, 16 N.E.2d 749, *aff'd* (1937), 289 Ill. App. 342, 7 N.E.2d 336, and *Vollrath v. Central Life Insurance Co.* (1926), 243 Ill. App. 181, which do not hold that the 90-day limitation is reasonable for the purported reason that most deaths directly and proximately caused by an accident will occur within the 90-day period.

■■ We cannot say that the policy's definition of accidental death is ambiguous and incapable of enforcement. It is our finding that the 90-day death limitation contained in the policy's increased indemnity provision is

contrary to the public policy of Illinois. We, accordingly, reverse the judgment of the circuit court and we remand for proceedings consistent with this opinion.

Reversed and remanded.

Mr. PRESIDING JUSTICE GREEN, concurring:
I concur in the decision to reverse the trial court and to remand the case to that court for further proceedings.

The complaint alleged that the insured lived beyond the expiration of the 90-day period only because of the use of extraordinary medical and surgical measures taken to preserve his life. I agree that public policy requires that the decision as to whether to use such methods should be unhampered by consideration of whether the insured lives beyond a stated period. For this reason, I agree that the amended complaint stated a cause of action and that enforcement of the 90-day limitation period would be contrary to public policy.

I do not agree that a provision of an insurance policy conditioning payment of double benefits upon the death of the insured occurring within 90 days of an accident causing his death is invalid *per se*.

Mr. JUSTICE WEBBER, dissenting:
I cannot agree with either the conclusion reached by the majority nor the reasons assigned.

The key phrase in the majority opinion, in my judgment, is "[A] court is required to resort to the vague outlines of public policy in order to do justice between the litigants before it." In an effort to justify holding for the plaintiff, with whom we all sympathize, the majority sets the stage for havoc in the insurance business.

Public policy can, and should, be declared by the legislature after sufficient fact-finding has been accomplished through its power of investigation. Neither this court, nor any court, can be certain as to the extent of the problem presented here. We cannot know how many outstanding policies may be affected by this ruling, which, for practical purposes, invalidates all 90-day clauses. We cannot know how many cases similar in nature to the one presented here occur in the course of business; it may be many, it may be few. These, and the myriad of other questions which may arise out of this decision, can be resolved only after legislative investigation. I have no opinion at the time of this writing as to whether the 90-day clause is antiquated and should be eliminated or whether it is still viable. I say only that it is a legislative and not a judicial matter.

Our entire structure of law is built built upon a healthy respect for

deadlines and limitations. The majority opinion recognizes them but suggests that they may be altered to suit particular litigants. If this be so, may a plaintiff file his personal injury suit two years and two days after the accident just because he has an appealing case? May one acquire title by adverse possession after 19 years, 11 months and 28 days just because he is a nice fellow? Without a set of limitations, all law becomes *ad hominem*.

Courts have acquired a less than brilliant reputation either for creating legislation or for repealing prior judicial legislation. As to the former, witness the confusion still existing in the field of strict liability in tort; as to the latter, witness the ill-fated effort to eliminate contributory negligence and substitute comparative negligence. Courts are well equipped to settle disputes between specific and definite adverse parties who are physically before the court. Problem-solving for society at large is beyond the institutional capacity of our tribunals.

I would affirm the decision of the trial court.