(No. 50263.—▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇▇)

CHRISTINE E. KIRK, Appellee, v. FINANCIAL SECURITY LIFE INSURANCE COMPANY, Appellant.

*Opinion filed December 4, 1978.*

CLARK, J., and WARD, C.J., dissenting.

Heyl, Royster, Voelker & Allen, of Springfield (Gary M. Peplow, of counsel), for appellant.

W. J. Simhauser, of Springfield, for appellee.

MR. JUSTICE RYAN delivered the opinion of the court:

Christine Kirk brought this action as beneficiary under the double indemnity accident provision of her husband's life insurance policy. The defendant insurer, Financial Security Life Insurance Company, moved to dismiss the complaint because the insured died 92 days after the accident. The double indemnity provision takes effect only

if the assured dies within 90 days of the accident. The Sangamon County circuit court dismissed the complaint and the appellate court reversed, holding that the 90-day provision violates public policy. One justice dissented. 54 Ill. App. 3d 192.

The facts are not disputed. On January 26, 1974, John Kirk was seriously injured in an automobile accident in Jackson, Mississippi. From that day until his death, Kirk was given little chance of survival. He died at the University Hospital in Jackson on April 28, 1974, 92 days after the accident.

The defendant insurance company paid the face amount of Kirk's life insurance policy, but refused to pay under the double indemnity provision because the assured died more than 90 days after the accident. The policy provided double indemnity benefits if the following provision was complied with:

> "ACCIDENTAL DEATH BENEFIT. The Company, while this policy is in full force and effect, other than under the nonforfeiture provisions, WILL PAY an Accidental Death Benefit to the Beneficiary upon receipt at its Home Office of due proof of the accidental death of the Insured which directly shows the accidental death occurred; (1) death resulted directly and solely from an accidental bodily injury, and (2) death occurred within ninety (90) days after the bodily injury, and (3) both the injury and death occurred while this policy was in full force and effect."

Thus, the benefit provision specifically limits double indemnity recovery to death occurring within 90 days of the fatal accident. The primary question posed by this appeal is whether this 90-day limitation on double indemnity recovery for accidental death is void as against public policy. We hold that this limitation is not against the public policy of Illinois and, as a consequence, we reverse.

As a preliminary matter, it is important to note that where the provisions of an insurance policy are clear and

unambiguous, courts do not hesitate to enforce those provisions fully. (*Cobbins v. General Accident Fire & Life Assurance Corp.* (1972), 53 Ill. 2d 285.) If there is an ambiguity in the policy then that ambiguity is resolved against the maker of the policy, the insurance company. (*Lenkutis v. New York Life Insurance Co.* (1940), 374 Ill. 136.) Here, the 90-day provision is clear and unambiguous. In order to collect double the face amount of the policy, the assured must meet three requirements. The death must result directly and solely from an accident, the date of death must be within 90 days of the accident, and both the injury and death must occur while the policy is in full force. There is no ambiguity in these three requirements.

The primary question posed is whether this unambiguous 90-day requirement violates Illinois public policy. Similar limitation periods appear in many life insurance policies and until very recently every jurisdiction faced with a challenge to these provisions had upheld them. (*Contois v. State Mut. Life Assur. Co.* (7th Cir. 1946), 156 F.2d 44, 46 (Ill.); *Spaunhorst v. Equitable Life Assur. Soc. of United States* (8th Cir. 1937), 88 F.2d 849, 851 (Mo.); *Barnett v. Travelers' Ins. Co.* (8th Cir. 1929), 32 F.2d 479, 480 (Mo.); *Kerns v. Aetna Life Ins. Co.* (8th Cir. 1923), 291 F. 289, 290 (S.D.); *Orrill v. Prudential Life Ins. Co. of America* (N.D. Cal. 1942), 44 F. Supp. 902, 904; *Brown v. United States Casualty Co.* (N.D. Cal. 1899), 95 F. 935, 936; *Bennett v. Life & Casualty Insurance Co.* (1939), 60 Ga. App. 228, 3 S.E.2d 794, 795; *Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, 303; *Hickey v. Washington National Insurance Co.* (1939), 302 Ill. App. 388; *Mullins v. National Casualty Co.* (1938), 273 Ky. 686, 688-89, 117 S.W.2d 928, 930; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185, 1188; *Drinan v. Clover Leaf Casualty Co.* (1919), 207 Mich. 677, 679, 175 N.W. 176, 177; *Hudson v. Mutual Ben. Health & Acc. Ass'n* (Mo. App. 1944), 184 S.W.2d

188, 189; *Weickselbaum v. Commercial Travelers Mut. Acc. Ass'n of America* (Sup. Ct. Kings County 1954), 129 N.Y.S.2d 612, 612-13; *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645; *Douglas v. Southwestern Life Insurance Co.* (Tex. Civ. App. 1964), 374 S.W.2d 788, 791; *Crowe v. North American Acc. Ins. Co.* (Tex. Civ. App. 1936), 96 S.W.2d 670, 671; 1A J. Appleman, Insurance sec. 612 (1965); Annot., 39 A.L.R.3d 1311 (1971).) Recently, at least·two courts have held these provisions invalid on public policy grounds. *Burne v. Franklin Life Insurance Co.* (1973), 451 Pa. 218, 301 A.2d 799; *Karl v. New York Life Insurance Co.* (1977), 154 N.J. Super. 182, 381 A.2d 62.

Though this precise issue has not previously been addressed by this court, several Illinois appellate courts have approved this type of time limitation. In *Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, the decedent had been injured on June 14, 1909, and died November 17, 1909. The insurer refused to pay under the double indemnity provision noting that the assured had died beyond the association's 90-day limitation period. The appellate court affirmed the dismissal of the suit, noting:

> "The proximate cause of death, especially when it follows at a time somewhat remote from the accident to which it may be attributed, is often the subject of controversy and litigation. Provisions of different kinds, designed to remove or limit a controversy on that subject, are found sometimes in the policies and sometimes in by-laws. Doubtless, the by-law in question had some such end in view.
>
> Its reasonableness would seem to rest upon a theory that if death does not usually result from the injuries received from an accident within

ninety days therefrom, it may be reasonably ascribed to other causes prior or intervening. We cannot say that such a time limit is unreasonable." (180 Ill. App. 300, 302.)

A similar time limitation was upheld in *Hickey v. Washington National Insurance Co.* (1939), 302 Ill. App. 388, where the assured died 60 days after an accident and the accident policy provided benefits only if the assured died within 30 days. Finally, in *Shelton v. Equitable Life Assurance Society of the United States* (1961), 28 Ill. App. 2d 461, the assured lost his leg nearly 3 years after the precipitating accident. Benefits under his policy were denied when the court held that a 90-day provision in the policy violated no known public policy.

Until 1973 the Illinois cases reflected a unanimous rule. In that year the primary case relied on by the plaintiff, *Burne v. Franklin Life Insurance Co.*, held that a 90-day time limitation for double indemnity accidental death benefits violated public policy. In *Burne,* the assured was kept alive 4½ years by sophisticated medical techniques. The insurer conceded that the sole cause of death was the accident, but argued that under the 90-day requirement the assured's death was outside the policy. The Pennsylvania Supreme Court held that requirement invalid. First, the court noted that the leading cases were well before modern advances in medical science. (451 Pa. 218, 301 A.2d 799, 801.) Such advances had, in that court's view, made the 90-day limit obsolete. Second, the court felt that extraneous matters, such as the eventual receipt of insurance proceeds, should not be a factor in the deliberations on whether and how to prolong life. (451 Pa. 218, 301 A.2d 799, 802.) Third, the court considered it fundamentally unjust to allow full recovery to a beneficiary who has endured little or no prolonged expense and anxiety, and yet allow no recovery for those who suffer the longest and endure the greatest expense. 451 Pa. 218,

301 A.2d 799, 801-02.

In a similar case, a trial level court in New Jersey followed *Burne* and held both a 90-day and 120-day limitation invalid. (139 N.J. Super. 318, 353 A.2d 564.) A New Jersey appellate court upheld that decision on the premise that the life policy's underlying purposes would not be frustrated where it was conceded that the assured died as a result of the accident, albeit beyond the 90-day limit. 154 N.J. Super. 182, 381 A.2d 62.

In contrast, the Ohio Supreme Court and Louisiana appellate court have recently rejected the policy arguments of Pennsylvania and New Jersey and upheld 90-day limitations. *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645 n.3; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185.

The long line of authority supporting these time-limitations requirements in insurance policies, the recent departure from these holdings by the Pennsylvania Supreme Court in *Burne* and the New Jersey appellate court in *Karl,* and the subsequent rejection of *Burne* by the Ohio Supreme Court and Louisiana appellate court indicate that the issue is not one where there are clearly defined and objective rules and standards of public policy. This is not a matter where public policy is so clear that objective criteria compel us to hold the 90-day limitation invalid. Furthermore, public policy of a State or the nation is found imbedded in its constitution and its statutes, and, when these are silent on a subject, in the decisions of the courts. (*Routt v. Barrett* (1947), 396 Ill. 322; *Pearson v. Adams* (1946), 394 Ill. 391; *Smith v. Board of Education* (1950), 405 Ill. 143.) The legislature has not been silent on the matter of public policy as it relates to the contents of insurance policies. The Director of the Department of Insurance is required by statute to review policies of insurance in certain categories and approve or disapprove

them, based on criteria including the established public policy of this State. The statute, section 143 of the Illinois Insurance Code, provides:

> "No company transacting the kind or kinds of business enumerated in Classes 1(a), 1(b) and 2(a) of section 4 shall issue or deliver in this State a policy or certificate of insurance, attach an endorsement or rider thereto, incorporate by reference by-laws or other matter therein or use an application blank, in this State until the form and content of such policy, certificate, endorsement, rider, by-law or other matter incorporated by reference or application blank has been filed with and approved by the Director. It shall be the *duty of the* Director to withhold approval of any such policy, certificate, endorsement, rider, by-law or other matter incorporated by reference or application blank filed with him if it contains provisions which encourage misrepresentation or are unjust, unfair, inequitable, ambiguous, misleading, inconsistent, deceptive, *contrary to law or to the public policy* of this State, or contains exceptions and conditions that unreasonably or deceptively affect the risk purported to be assumed in the general coverage of the policy. In all other cases the Director shall give his approval. Failure of the Director to act within sixty days after submission shall constitute approval unless the Director extends by not more than an additional 30 days the period within which he may approve or disapprove any such form by giving notice to the insurer of such extension before expiration of the initial 60 days period. The action of the Director in disapproving such form shall be subject to judicial review as set forth in Section 407." (Emphasis added.) Ill. Rev. Stat. 1977, ch. 73, par. 755.

Additional statutory authority to proscribe certain policy provisions, by rule, is found in section 377 of the Illinois Insurance Code (Ill. Rev. Stat. 1977, ch. 73, par. 1013). Specifically, "The Director is charged with the rights, powers and duties appertaining to the enforcement and execution of all the insurance laws of this State. He shall have the power (a) to make reasonable rules and regulations as may be necessary for making effective such

laws." (Ill. Rev. Stat. 1977, ch. 73, par. 1013.) Through these two sections the Director of Insurance is clearly given the duty to make judgments as to the validity of the 90-day requirement.

Here, we may assume that the Financial Security Life insurance policy was approved pursuant to section 143 by the Department of Insurance. (*Bernardini v. Home & Automobile Insurance Co.* (1965), 64 Ill. App. 2d 465, 467.) In addition, the Department of Insurance has specifically authorized the use of the 90-day limitation in its rules and regulations. Rule 20.07 approved August 1, 1978, sets out the "Minimum Standards of Individual Accident and Health Insurance." That rule authorizes the following:

> "Accidental death and dismemberment benefits shall be payable if the loss occurs within 90 days from the date of the accident, irrespective of total disability." Department of Insurance Rule 20.07, sec. 7(A)(10), 2 Ill. Reg. No. 30, at 57 (July 28, 1978).

The approval of the use of 90-day limitation periods in policies of insurance by the Department, although not conclusive upon the courts, is, however, entitled to great weight as against the contention that such a provision is against public policy. (*Clark v. Federal Life Insurance Co.* (1927), 193 N.C. 166, 171-72, 136 S.E. 291, 293, quoted in *Shelton v. Equitable Life Assurance Society of the United States* (1961), 28 Ill. App. 2d 461, 467.) In *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361, this court upheld the constitutionality of legislation which allowed the Department of Insurance to prohibit conditions in fire insurance policies which "unreasonably or deceptively affect the risks." (68 Ill. 2d 361, 374.) In that case it was acknowledged that the Department was acting to carry forward the mandate of the legislature and the court stated:

> "We hold that the legislature may delegate to

the Director the power to prescribe a uniform insurance contract containing a clause limiting the time during which actions may be brought by the insured against his insurer." (68 Ill. 2d 361, 369.)
In our case, pursuant to the command of the legislature, we must assume that the Director has reviewed the provisions of the insurance policy in question to ascertain whether its provisions were "unjust, unfair," etc., or "contrary to law or to the public policy of this State" (Ill. Rev. Stat. 1977, ch. 73, par. 755). The long-established approval of the usage of time limitations in insurance policies similar to that contained in the policy in question, in the absence of any action by the legislature countermanding the approval by the Director of such provisions, is strong evidence that the General Assembly does not consider the use of such limitation periods violative of public policy.

That this 90-day provision is a matter best left to the legislature and Department of Insurance is clear from an analysis of the issues involved. While there may be valid reasons which support the validity of the decisions in *Burne* and *Karl* (see Note, *Death Be Not Proud—The Demise of Double Indemnity Time Limitations,* 23 DePaul L. Rev. 854 (1974)), there are numerous policy arguments favoring the 90-day limitation.

It has been held in several cases that these provisions minimize uncertainty as to the cause of the assured's death. (*Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, 303; see also *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185; *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645.) Without the finality of a time limitation, the accompanying uncertainty as to the cause of death as the time between that event and the injury increases will spawn a substantial amount of litigation as beneficiaries

attempt to establish some injury-connected cause of their insured decedent's death.

Also, several cases have acknowledged that these provisions reflect risk decisions. An insurance company sets policy rates based on the risks of recovery. As a consequence, the 90-day limitation, which clearly affects the risk, is reflected in the rate charged an assured. Thus, these cases hold, as a matter of contract law, that the assured is receiving what he has paid for. The limitation is thus reasonable as a reflection of the insurer's risk. *Shelton v. Equitable Life Assurance Society of United States* (1961), 28 Ill. App. 2d 461, 464; *Brown v. United States Casualty Co.* (N.D. Cal. 1899), 95 F. 935, 937; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185, 1188.

We find unpersuasive the argument that the limitations on the time within which death must occur should be abandoned in light of the advancements made by the medical profession in the ability to prolong life or to defer death. (See *Burne v. Franklin Life Insurance Co.;* Note, *Death Be Not Proud—The Demise of Double Indemnity Time Limitations,* 23 DePaul L. Rev. 854, 860 (1974).) Regardless of the state of the art of healing or preserving life, there has always been and there always will be those who will die on the 89th day following the injury and those who will die on the 91st day following an injury. In the cases cited above, we note that this problem has been in litigation since prior to the advent of this century.

The suggestion that the injection of financial matters may detrimentally affect decisions by double indemnity life insurance beneficiaries is not substantiated by the case at bar. Indeed, the beneficiary appears to have done precisely the opposite of what she argues. She maintained her husband, despite the policy, for more than 90 days. The 90-day requirement did not act as a disincentive in the provision of medical services.

As a general matter, the suggestion that persons will be encouraged to "pull the plug" is already dealt with by the concept of "insurable interest." A person may not purchase insurance on another unless he has a positive incentive to keep that person alive. (*Colgrove v. Lowe* (1931), 343 Ill. 360; *Warnock v. Davis* (1882), 104 U.S. 775, 26 L. Ed. 924.) The law already has a requirement that will protect the assured.

If the 90-day provision is invalid as injecting financial motives into life-saving decisions, then a whole host of other provisions and laws must be invalidated. What of term insurance? What of the termination of some insurance benefits at age 60? What of life insurance itself? Justice Holmes, speaking of insurable interest, noted aptly:

"The law has no universal cynic fear of the temptation opened by a pecuniary benefit accruing upon a death. It shows no prejudice against remainders after life estates, even by the rule in *Shelley's Case.*" *Grigsby v. Russell* (1911), 222 U.S. 149, 155-56, 56 L. Ed. 133, 137, 32 S. Ct. 58, 59.

The implications of a decision invalidating 90-day limitations are quite broad. See, *e.g., INA Life Insurance Co. v. Pennsylvania Insurance Department* (1977), 31 Pa. Commw. 416, 376 A.2d 670 (invalidation of *all* time limits in accidental death provisions).

It is clear on review of the many arguments that favor and oppose the 90-day restriction that continued approval is best left to the Department of Insurance and the legislature. The regulation of insurance has long been the prerogative of the legislature, and we should not usurp that authority. *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361.

Because of the use of a 90-day limitation in a double indemnity accident clause of a life insurance policy is not clearly against public policy, the judgment of the appellate

court is reversed and the judgment of the circuit court of Sangamon County is affirmed.

*Appellate court reversed;*
*circuit court affirmed.*

MR. JUSTICE CLARK, dissenting:

I would affirm the appellate court for the reasons stated there. 54 Ill. App. 3d 192, 194-97.

The majority opinion has amassed an impressive array of cases and arguments supporting the 90-day limitation on double or additional indemnity payments in life insurance policies and evidencing that the limitation is not against public policy. Moreover, the majority's view that deference, not absolute, should be given to decisions, made by the Director of the Department of Insurance pursuant to legislative command, is correct. (Ill. Rev. Stat. 1977, ch. 73, pars. 755, 1013; *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361.) However, I am not persuaded by the majority's implication that the Director's approval of the 90-day limitation was the only reasonable exercise of his discretion. I believe that consideration of public policy dictates disapproval of the 90-day limitation: "[W]henever any contract conflicts with the morals of the time, and contravenes any established interest of society, it is void as being against public policy." 54 Ill. App. 3d 192, 196.

In *Burne v. Franklin Life Ins. Co.* (1973), 451 Pa. 218, 221-24, 301 A.2d 799, 801-02, the Supreme Court of Pennsylvania said:

> "There are strong public policy reasons which militate against the enforceability of the ninety day limitation. The provision has its origins at a much earlier stage of medicine. Accordingly, the leading case construing the provision predates three decades of progress in the field of curative medicine. *Advancements made during that period have enabled the medical*

*profession to become startlingly adept at delaying death for indeterminate periods.* Physicians and surgeons now stand at the very citadel of death, possessing the awesome responsibility of sometimes deciding whether and what measure should be used to prolong, even though momentarily, an individual's life. The legal and ethical issues attending such deliberations are gravely complex.

The result reached by the trial court presents a gruesome paradox indeed—it would permit double indemnity recovery for the death of an accident victim who dies instantly or within ninety days of an accident, *but would deny such recovery for the death of an accident victim who endures the agony of prolonged illness, suffers longer, and necessitates greater expense by his family in hopes of sustaining life even momentarily beyond the ninety day period.* To predicate liability under a life insurance policy upon death occurring only on or prior to a specific date, while denying policy recovery if death occurs after that fixed date, offends the basic concepts and fundamental objectives of life insurance and its [sic] contrary to public policy. Hence, the ninety day limitation is unenforceable.

\*\*\* [T]he decisions as to what medical treatment should be accorded an accident victim should be unhampered by *considerations which might have a tendency to encourage something less than the maximum medical care on penalty of financial loss if such care succeeds in extending life beyond the 90th day.* All such factors should, wherever possible, be removed from the antiseptic halls of the hospital. Rejection of the arbitrary ninety day provision does exactly that.

\*\*\* [V]irtually every \*\*\* case [which has]

construed a ninety day limitation provision, is based on considerations which have no pragmatic applicability to the factual situation here. The *earlier judicial interpretation of the ninety day provision was that its underlying purpose was to govern situations where there existed some possible uncertainty over whether injuries sustained in an accident would actually result in death.* The ninety day provision attempted to delineate a line governing cases where the injuries may or may not cause death. Ninety days was the arbitrary period advanced by the carrier within which to ascertain whether death will in fact result from the accident." (Emphasis added.)

I agree with those statements. Accord, *Karl v. New York Life Ins. Co.* (1977), 154 N.J. Super. 182, 381 A.2d 62. See Note, *Death Be Not Proud—The Demise of Double Indemnity Time Limitations,* 23 DePaul L. Rev. 854 (1974).

I further believe that an insured is placed at a distinct disadvantage, as is frequently the case where insurance contracts and policies are concerned, of not having been able to negotiate any of the provisions. The 90-day limitation "within the provision is not reached by process of negotiation between the parties but is a standard time which the individual must accept if he desires the accidental death protection." (23 DePaul L. Rev. 854, 861.) The insurance applicant is relegated to the role of either adhering to or rejecting, but not changing or amending, a standardized contract drafted by a party with greater bargaining strength.

The majority has missed an opportunity to establish a more humane practice of permitting additional indemnity recovery where causation is not at issue. Modern medical technology and medical ethics have dictated a public

policy which requires terminating adherence to an arbitrary time limit devised decades ago.

MR. CHIEF JUSTICE WARD joins in this dissent.