**NATIONAL WRECKING COMPANY, Plaintiff–Appellant,**

v.

**ST. PAUL SURPLUS LINES INSURANCE COMPANY, Defendant–Appellee.**

No. 93–1017.

United States Court of Appeals, Seventh Circuit.

Argued Oct. 26, 1993.

Decided Dec. 3, 1993.

Richard G. Schultz, Steven H. Gistenson (argued), Foran & Schultz, Chicago, IL, for plaintiff-appellant.

Thomas M. Hamilton, D. Kendall Griffith, Rebecca R. Haller (argued), Hinshaw & Culbertson, Chicago, IL, for defendant-appellee.

Before RIPPLE and KANNE, Circuit Judges, and ESCHBACH, Senior Circuit Judge.

ESCHBACH, Senior Circuit Judge.

In a diversity suit pursuant to 28 U.S.C. § 1332(a), National Wrecking Company ("National"), an Illinois corporation, sued St. Paul Surplus Lines Insurance Company ("St. Paul"), a Minnesota corporation, for breach of contract. National sought reimbursement of $200,984.00 for legal expenses it incurred defending a claim which it ultimately settled for $1 million. St. Paul, National's insurer, paid the entire $1 million settlement and filed a counterclaim for the amount it overpaid. Both parties moved for summary judgment. The district court ruled for St. Paul and National appeals. We affirm.

Sterling Chemicals sued National in connection with an accident which occurred during the coverage period of an insurance policy issued by St. Paul.[1] Pursuant to a Self Insured Retention Endorsement (the "Endorsement") to the primary liability policy, St. Paul opted to allow National to defend the lawsuit. National incurred $228,000 in legal expenses and, with St. Paul's approval, subsequently settled the suit for $1 million. St. Paul paid the entire $1 million and then made a written demand for reimbursement from National for $79,000, pursuant to its understanding of the Endorsement. Under a different interpretation of the Endorsement, National responded by suing St. Paul for $200,984.00. Their dispute concerns the amount each is obligated to pay under the Endorsement.

The relevant portions of the Endorsement read:

### SELF INSURED RETENTION ENDORSEMENT

It is agreed that such insurance as is afforded by the policy is subject to the following additional provisions. In the event of conflict with any provision elsewhere in the policy the provisions of this Endorsement shall control the Application of Insurance to which the policy applies.

I. (A) The total liability of the Company [St. Paul] for all damages shall not exceed the limits of liability as stated in the Policy Declarations, Coverage Parts or Endorsements attached thereto and *shall apply in excess of the Insured's [National's] self-insured retention plus claim expense (hereinafter called the Retained Limit).*

### RETAINED LIMIT

Two Hundred Fifty Thousand Dollars ($250,000) Each occurrence. N/A to Aggregate.

---

1. Sterling Chemicals is not a party to this lawsuit.

(B) In the event that the aggregate Retained Limit is exhausted by damage payments arising from occurrences during the policy term, covered by this policy, (unless otherwise agreed by the Company) the provisions of this Retention endorsement are void and all terms and conditions of the policy are reinstated to their full force and effect; and the Company shall then be obligated to assume charge of the settlement or defense of any claim or suit against the Insured not yet settled, whether or not reported to the Company.

II. (A) The section entitled "Supplementary Payments" is hereby deleted from the policy. The Company at its own expense shall have the right and opportunity to associate with the Insured in the defense, appeal, or control of any claim or suit arising out of an occurrence to which this insurance applies seeking damages in excess of the Retained Limit. In such event the Insured and the Company shall cooperate fully.

(B) Should any occurrence appear likely to exceed the Retained Limit, no loss expenses or legal expenses shall be incurred on behalf of the Company without its prior consent.

(C) *Should any claim or suit arising from an occurrence during the policy term be settled for a total amount not exceeding the Retained Limit then no loss expenses and/or legal expenses shall be payable by the Company.*

(D) *Should the settlement amount for any claim or suit exceed the Retained Limit the Company shall pay its proportion of loss expenses (excluding salaries of employees and office expenses of the names Insured) in the ratio which its proportion of the liability for the judgment rendered, or settlement made, bears to the whole amount of said judgment or settlement.*

(Emphasis supplied.)

■ The district court, interpreting "settlement amount" in Section II(D) to include only the amount paid to a claimant to resolve the dispute (in this case, $1 million), awarded St. Paul summary judgment and ordered National to pay St. Paul $79,000.

We review the district court's order of summary judgment *de novo. See Phillips v. Lincoln Nat'l Life Ins. Co.,* 978 F.2d 302, 307 (7th Cir.1992). It is axiomatic that interpretation of insurance contracts is a matter of law, *Hartford Ins. Co. v. Jackson,* 206 Ill. App.3d 465, 469, 151 Ill.Dec. 451, 564 N.E.2d 906 (2nd Dist.1990), and we are mindful that where there are ambiguities in an insurance contract, Illinois law requires that we resolve them against the insurer. *Kirk v. Financial Security Life Ins. Co.,* 75 Ill.2d 367, 371, 27 Ill.Dec. 332, 389 N.E.2d 144 (1978). A mere disagreement about a contract does not necessarily create an ambiguity. *A. Miller & Co. v. Cincinnati Ins. Co.,* 217 Ill.App.3d 572, 575, 160 Ill.Dec. 560, 577 N.E.2d 885 (3d Dist.1991).

■ Admittedly, St. Paul's contract is not a model of clarity, but when read as a whole, *Western Casualty & Surety Co. v. Brochu,* 105 Ill.2d 486, 86 Ill.Dec. 493, 475 N.E.2d 872 (1985), it is consistent with St. Paul's interpretation. By contrast, National's interpretation requires us to read separate provisions in the contract out of context and produces a result utterly at odds with common sense.

When we add the $1 million settlement claim to the $228,000 of legal expenses, National and St. Paul paid between them a total of $1,228,000 either to Sterling Chemical or National's lawyers. If we follow St. Paul's interpretation, St. Paul must pay $921,000 and National must pay $307,000. Conversely, National's interpretation requires that St. Paul pay $1,200,894 and National, $27,106. It might appear that both parties are overreaching a bit given that the Endorsement provides a Retained Limit of $250,000, but a careful reading of the contract demonstrates that it is National who demands the sun and moon.

Although more than a trifle convoluted, National's construction of the Endorsement is as follows. Up to when National settled with Sterling for $1 million, National had expended $228,000 in legal expenses. The "Retained Limit" of $250,000, as defined in Section I(A), includes legal expenses, and at the time of the settlement the remaining amount of the Retained Limit was $22,000

(subtracting the legal expenses up to that point of $228,000 from the $250,000 Retained Limit).[2] National then argues, according to Section II(D), that it is only obligated to pay $22,000 (the remainder of the Retained Limit) of the $1 million settlement. National then contends that by dividing $978,000 ($1 million minus the $22,000 National agrees it must pay) into $1 million (.978), Section II(D) requires St. Paul to pay 97.8% of the $228,-000 in legal expenses, or $222,984. Adding $978,000 to $222,984 ($1,200,984), then subtracting the $1 million St. Paul already paid, National concludes that St. Paul must still pay National $200,984 in addition to the $1 million St. Paul already paid in the settlement with Sterling Chemicals.

Although the circuity of National's walk through the Endorsement is readily apparent, it is even more blatant if, as suggested by St. Paul, we change the assumptions just slightly. In this case, assume National had not expended $228,000 on legal fees, but $250,000. At this point, National would have exhausted its obligations under the Retained Limit, and it would be obligated to pay none of the settlement amount. Therefore, according to National, it would also be obligated to pay none of the legal fees and would be entitled to reimbursement of the entire $250,-000 it expended on legal fees. Thus, out of an entire settlement and expense amount of $1,250,000, St. Paul would pay $1,250,000 and National would pay nothing. Given this, we wonder why National did not wait to settle with Sterling Chemical until its lawyers' bills had further accumulated.

The fallacy of National's argument rests in its suggestion that Retained Limit as used in Section II(D) includes only the remaining amount of the Retained Limit (in this case, $22,000). This is simply wrong. The use of the term "Retained Limit" in II(D) does not include any modifiers such as "remaining" or "residual" and there is nothing in the contract to suggest that it changes over time with additional expenses paid by National. When the parties used "Retained Limit" in Section II(D), they obviously meant the entire $250,000.

Although National's argument is at most untenable, we must still answer National's concern that under St. Paul's interpretation National is required to pay $307,000—$57,-000 more than the Retained Limit of $250,-000. If Section I(A) were the only provision in the Endorsement, National could justifiably be upset at having to pay more than $250,000. However, reading the contract as a whole, Sections II(C) and II(D) make clear that the parties intended to share legal expenses proportionately when a claim or settlement exceeded $250,000. Section II(C) states that where a claim is settled for less than the Retained Limit—in other words, for less than $250,000—then St. Paul is obligated to pay nothing. For example: If National settled the claim for $249,000, $1,000 less than the Retained Limit of $250,000, St. Paul would not be obligated to pay any legal expenses, even if they were in excess of $1,000. Therefore, National would be required to pay both the $249,000 settlement and any legal fees it incurred, even if those fees exceeded $1,000 and thereby required National to pay more than a total of $250,000. This confirms that National could, in some circumstances, be required to pay in excess of $250,000.

Section II(D) is simply a logical extension of Section II(C). Under Section II(D), if the settlement exceeds $250,000, legal expenses will be shared proportionately between National and St. Paul. The proportion of legal fees for which St. Paul is responsible is determined by dividing the sum of the settle-

---

**2.** National interprets the "Retained Limit" as a floating amount which begins at $250,000, but then is reduced by the amount National spends on legal expenses. This interpretation finds no support whatsoever in the Endorsement. *See infra.*

Additionally, St. Paul contended in the district court, but does not contend here, that "Retained Limit" only included the amount of the underlying claim, not legal expenses associated with the litigation or settlement of the claim. Quite frankly, we are surprised St. Paul does not raise this argument here. When read as a whole, provisions II(C) and II(D) of the Endorsement lend themselves to just such an interpretation. It appears that the parenthetical in Section I(A) may have been an unfortunate misplacement. Nevertheless, we agree with St. Paul that even if the "Retained Limit" includes legal expenses, National is nevertheless required to share in legal and claim expenses where the settlement amount exceeds $250,000 (the Retained Limit).

ment amount minus $250,000 (in other words, the amount of the settlement St. Paul would be required to pay) by the settlement amount. This fraction is then multiplied by the total legal expenses incurred. In this case, we subtract $250,000 from $1 million ($750,000), and divide $750,000 by $1 million or 75%. We then multiply 75% by the total legal expenses of $228,000 to get $171,000. St. Paul's total liability under the Endorsement is calculated by adding $750,000 to $171,000 to get $921,000. Because St. Paul has already paid $1 million, or $79,000 in excess of its obligations, we affirm the district court's summary judgment and its order requiring National to reimburse St. Paul $79,000.

AFFIRMED.

Eugene W. Alpern, pro se.

Robert G. Toews, Office of the Atty. Gen., Chicago, IL, Joan S. Cherry, Asst. State's Atty., Chicago, IL, for Philip S. Lieb.

Rosalyn B. Kaplan, Asst. Atty. Gen., Robert K. Blain, Chicago, IL, for Allen S. Gabe.

Robert K. Blain, Chicago, IL, for Phyllis Alpern.

Before POSNER, Chief Judge, and CUMMINGS and BAUER, Circuit Judges.

POSNER, Chief Judge.