No. 25,206.

JULIUS H. RABIN, *Appellee*, v. THE CENTRAL BUSINESS MEN'S ASSOCIATION, *Appellant*.

SYLLABUS BY THE COURT.

1. ACCIDENT INSURANCE—*Voluntary Surrender of a Former Policy—No Breach of Warranty in Application*. In an application for accident insurance a warranty that no other insurance had been canceled is not breached by the prior voluntary surrender of a policy by the assured.

2. SAME—*Incomplete Answer to Questions in Application—Waiver by Insurer*. When upon the face of an application for accident insurance a question appears to be incompletely answered and the insurer issues a policy without further inquiry it waives the incompleteness of the answer.

3. SAME—*"Continuous" Injury Defined*. An injury develops at once and is continuous within the meaning of an accident insurance policy when it follows directly from the accidental hurt within such time as the processes of nature consume in bringing the person affected to a state of incapacity to prosecute his occupation.

Appeal from Wyandotte district court, division No. 3; WILLIAM H. McCAMISH, judge. Opinion filed June 7, 1924. Affirmed.

*J. E. McFadden, O. Q. Claflin, jr.*, both of Kansas City, and *Ross J. Ream*, of Kansas City, Mo., for the appellant.

*J. H. Brady*, and *T. F. Railsback*, both of Kansas City, for the appellee.

The opinion of the court was delivered by

HARVEY, J.: This is an action upon an accident insurance policy. There was a verdict and judgment for plaintiff, and defendant has appealed.

The petition contained the usual allegations for such an action, and had attached to it a copy of the policy sued upon, including a rider indemnifying for injuries from pyrogenic infection. The answer, after admitting the execution of the policy, contained a general denial, and averred that plaintiff had made false answers to material questions in his application for the policy which he had warranted as true and which had been relied upon by defendant in issuing the policy. The reply was a general denial.

Among the answers given by plaintiff in his application for the policy, and which he warranted as being true, were the following:

"Has any application ever made by you for life, accident or health insurance been declined? Answer as to each: No.

Rabin v. Business Men's Association.

"Has any life, health or accident policy issued to you been canceled? Answer as to each: No.

"Has any renewal of a life, accident or health policy been refused by any company or association? Answer as to each: No."

Defendant contended that the second portion of this question was falsely answered, for the reason that in 1915 plaintiff had policies in three accident insurance companies which were canceled, and offered evidence tending to show that fact. Plaintiff in his testimony admitted that he had three accident insurance policies; said he had received an injury which resulted in a fractured arm; that he presented a claim under each policy; that he was not satisfied with the settlement made, and that he had surrendered the policies by going personally to the general office of the respective companies at Kansas City, Mo., and turning his policies in and receiving the unearned premiums thereon. On this question the court instructed the jury as follows:

"In regard to this I instruct you that the cancellation contemplated by the question related to cancellation by other insurance companies when exercising their option under the policy to cancel same, and does not refer to a cancellation by the plaintiff himself or the assured because of being dissatisfied with the manner in which his claims were handled or other conduct on the part of the insurance company objectionable to him."

Appellant complains of this instruction, and says that by it the court has changed the question asked in the application so as to read, "Has any life, health or accident policy issued to you been canceled by the company issuing the same?" and contends that that was not within the province of the trial court. Considering question eight as a whole, it is clear the company wanted such information as would indicate whether or not any company had ever declined to insure the applicant or canceled the policy issued to him or refused to renew a policy previously issued, and so construed the question is material. It was of no importance to the company to know whether or not the applicant had voluntarily surrendered a policy, even though technically it might have been marked canceled, or whether he had let one lapse by reason of nonpayment, for under such circumstances the act would not indicate anything detrimental to the applicant as a risk. In 1 C. J. 423, speaking of false warranties in an application for accident insurance and the interpretation which should be given to them, it is said: "So also the voluntary surrender of a policy is not a breach of a warranty that no other insurance has been canceled."

In *Smith v. Insurance Co.*, 36 N. B. 300, Smith had two accident policies with one insurance company, and sustained an injury, for which he made claim. After some controversy the amount payable was agreed to. The company, in remitting to its local agent, sent a check for the amount agreed to be due upon the claim, and stated, "As we are desirous of retiring from the risk we inclose a further check" for the unearned premium, and asked its local agent to take up the policies in making settlement of the claim. The agent did not read the letter to the insured, but handed him the check for the amount of the settlement and asked him if he was willing to surrender the policies on the unearned premiums being returned. To this the insured assented. The agent then gave him the check for the unearned premiums and the insured delivered the policies. Thereafter he made application to another insurance company for accident insurance and stated in his application, "No accident policy ever issued to him had been canceled by this or any other company, corporation or association, except as herein stated." No exceptions were stated. In an action upon this last policy the defense was that this answer was false, and that it avoided the policy. The court held "that the putting an end to the policy with the consent of the plaintiff was a surrender and not a cancellation, and was not a breach of the warranty that no policy issued to him had ever been canceled."

In *Wells v. Great Eastern Casualty Co.*, 40 R. I. 222, the application contained this statement: "No accident, sickness or life insurance policy issued to me has ever been canceled or renewal refused except as follows—no exceptions." In an action upon the policy it was contended that this statement warranted to be true in the application was false. It is contended by plaintiff that the policy was surrendered instead of canceled. The court, in discussing the matter, said:

"In requiring that an applicant state whether an accident, sickness or life insurance policy issued to him had ever been canceled the defendant must be held to have referred to cancellation by the insurer and not to a policy voluntarily surrendered by the insured, even though the policy so surrendered had been marked 'canceled' by the insurer. An insurance company might well regard it as a fact material to be known by it in passing upon the acceptance of a risk, that insurance previously secured by the applicant had been regarded by the insurer as an undesirable risk and had been canceled. The fact that there had been a previous voluntary surrender of an insurance policy by the insured would be of slight, if of any, importance. If the defendant regarded

the previous surrender of a policy by the applicant as a fact material to be known by it, it should have specifically required information as to that as well as concerning the prior cancellation of any policy." (p. 228.)

The instruction given correctly interpreted the purpose of the question. The court properly submitted to the jury whether the policies had been canceled at the instance of the companies which had issued them or whether they had been surrendered by the assured. The evidence in this case was sufficient to support a judgment that they had been surrendered by the assured rather than canceled by the companies.

Defendants as one of its defenses averred that plaintiff had made a false warranty in his answer to question nine in the application, as follows:

"Q. Have you ever made claim for or received indemnity on account of any injury or illness? If so, give companies, or associations, dates, amounts and causes. A. Yes, about eight years ago, have forgotten name of company."

The contention was that this answer was false and fraudulent, in that plaintiff in 1915 had made claim for and received indemnity on account of injury from *three* different companies, and evidence was offered tending to support that fact. In his instructions the court in effect took this defense away from the jury. Appellant complains of that ruling. The question included five elements, viz.: (1) Have you made a claim? (2) name of companies; (3) dates; (4) amounts; and (5) causes. He answered (1) yes, which is conceded to be true; (2) that he had forgotten name of companies, and there is no evidence to contradict that. Complaint is made that the word "company" is used in the singular, when in fact there were three companies. (3) About 8 years ago, when the correct date was in July, 1915, less than 6 years. No attempt was made in the answer to give (4) amounts, and (5) causes. The answer was obviously imperfect and incomplete, but defendant issued the policy thereon without any request that it be completed or perfected.

. The rule seems to be well recognized that when upon the face of an application a question appears not to be answered at all or to be incompletely answered and the insurer issues a policy without further inquiry, it waives the incompleteness of or failure to answer, as the case may be, and renders the failure to answer immaterial. (3 Joyce on Insurance, 2d ed., § 1870; *Phœnix Life Ins. Co. v. Raddin*, 120 U. S. 183; *Smith v. N. A. A. I. Co.*, 46 Nev. 30.) The court did not err in taking this defense from the jury.

Rabin v. Business Men's Association.

The policy sued on insured plaintiff against loss resulting from bodily injuries effected directly and independently of all other causes, "If such injuries independently and exclusively of all other causes shall wholly and continuously disable the insured from the date of accident from performing any and every kind of duty pertaining to his occupation." The evidence tended to show that about July 1, plaintiff, in going to a telephone in the night, injured his great toe by striking it against the furniture with such force as to drive the nail back into the flesh, causing an injury which required the nail to be removed, and for about ten days plaintiff was unable to conduct his business. That from about July 13 for about ten days he was able to be about the office and perform his work, when what proved to be a pyogenic infection developed, requiring him to go to the hospital, where he remained for some time and was operated on several times. Upon this phase of the case the court instructed the jury as follows:

"If you find and believe from the evidence that plaintiff's great toe was injured by being struck against a chair or some object on or about the 1st day of July, 1921, and that such injury resulted in the cutting and bruising or abrasing of the toe to such an extent that it was infected by pyogenic germs from external inoculation through these cuts or bruises, then and thereafter until the 13th day of July following plaintiff was totally disabled from performing any and every duty pertaining to his occupation; that on said 13th day of July, 1921, said infection subsided for a period until the 23d day of July, 1921, to such an extent he was able to perform his said duties, and that on said 23d day of July, 1923, said original infection so produced from the injury to said great toe recurred, and that after said 23d day of July, 1921, plaintiff became totally disabled thereby and he was continuously disabled from performing any and every kind of duty pertaining to his occupation following such recurrence of said infection, then I instruct you he is entitled to recover, if you find for him on the other points, notwithstanding the fact of the temporary subsidence of such infection."

Appellant complains of this, and contends that plaintiff was not continuously disabled longer than the first ten days after the accident; that any loss of time after that was not covered by the policy. The policy had a rider attached to it indemnifying for injury by pyogenic infection resulting from an accident. The evidence was that the pyogenic germs, or pus-creating germs, do not develop at once from the injury, but require time, in the natural course of events, for their development. An injury develops at once within the meaning of a policy of this character when it follows directly from the accidental hurt within such time as the processes of nature

The State, *ex rel.,* v. Thomas County.

consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation. (*Erickson v. Commercial Travelers,* 103 Kan. 831, 176 Pac. 989, and cases there cited.)   Hence the fact that it took ten days or more for the injury to develop in its ordinary course to such an extent that plaintiff was wholly incapacitated from performing any of his duties does not prevent the injury from being immediate and continuous within the meaning of the policy.

Appellant complains that the court did not in his instructions define the term pyogenic infection.   It had been repeatedly defined by the witnesses as pus infection.   There was no question as to what the term meant, and it had been so frequently used and defined in the trial of the case that there was no necessity for special definition of it in the instruction.   Several alleged errors in the conduct of the trial are complained of.   We have examined each of them and find nothing in any of them to require a reversal.

The judgment of the court below is affirmed.