No. 57,998

Eleanor E. Hawes, *Appellant,* v. Kansas Farm Bureau and Kansas Farm Life Insurance Company, Inc., *Appellees.*

(710 P.2d 1312)

Opinion filed December 6, 1985.

Paul J. Mohr, of Gerald W. Scott, P.A., of Wichita, argued the cause, and Gerald W. Scott, of the same firm, was with him on the brief for appellant.

Jerry G. Elliott, of Foulston, Siefkin, Powers & Eberhardt, of Wichita, argued the cause and Stephen M. Kerwick was with him on the brief for appellees.

The opinion of the court was delivered by

McFarland, J.: This is an action by a beneficiary seeking to collect under accidental death double indemnity provisions in two life insurance policies. The trial court held in favor of the defendant insurance company and plaintiff appeals therefrom.

One of the issues before the trial court was whether or not the insured died as the result of an accident. The trial court found that the death was the result of an accident. This finding is not challenged on appeal. The pertinent facts may be summarized as follows. In December 1980, two events of significance occurred to the insured, Wardlow Hawes. He sustained a deep cut on a hand which was slow to heal. Concurrent with the healing process, the insured was treating his cattle for shipping fever. The method of treatment for the cattle involved was innoculating them with the antibiotic Tevcocin. While treating his cattle, the insured spilled some of the antibiotic on his hands.

In mid-March 1981, the insured became ill and was diagnosed as having aplastic anemia. The antibiotic Tevcocin contains Chloramphenicol, a substance which can cause aplastic anemia in the human species if introduced into the body. The insured died of aplastic anemia on September 4, 1981. For appeal purposes it is undisputed that the decedent acquired aplastic

anemia by accidental means—the spilling of the antibiotic on his cut hand no later than February 1981 (the last time period the drug was used).

At all relevant times, Mr. Hawes was the insured under two life insurance policies issued by defendant Kansas Farm Bureau Life Insurance, Inc. Each of the policies contained accidental death double indemnity provisions which provided:

"The company will pay the benefit amount set forth in the Schedule of Additional Benefits on page three of this policy, subject to all provisions of this policy and other conditions hereunder, *upon receipt of due proof that the death of the Insured resulted, directly and independently of all other causes, from accidental bodily injury* as evidenced by a visible contusion or wound on the exterior of the body (except in the case of drowning or internal injuries revealed by an autopsy) and that such death occurred while this policy and this rider were in full force and effect *and within ninety days from the date of such injury.* Such amount will be paid to the Beneficiary or Beneficiaries in addition to any amount which may otherwise be due and in the same manner as the other proceeds of this policy exclusive of the proceeds of any other rider or riders attached thereto." (Emphasis supplied.)

It is undisputed that the insured's death occurred more than ninety days after the last possible accidental exposure to the drug. Defendant insurance company paid the plaintiff beneficiary the face value of the policies (a total of $55,000). In this action the plaintiff seeks an additional $55,000 under the accidental death double indemnity riders to the policies.

Under the undisputed facts, plaintiff's claim is barred if the requirements in the double indemnity provisions that death occur within ninety days after the accidental injury are valid. Plaintiff's position is that the ninety-day requirement is invalid and unenforceable. Her challenge to the time restriction is predicated upon several grounds.

We shall first consider whether or not the time limitation is an unconscionable contract term. Plaintiff raises the issue in her brief but does not discuss the matter in any depth.

In *Wille v. Southwestern Bell Tel. Co.*, 219 Kan. 755, 758-60, 549 P.2d 903 (1976), this court discussed the concept of unconscionability and the factors which go towards determining whether or not a contract is unconscionable. The court in *Wille* stated as follows:

"Although the doctrine of unconscionability ·is difficult to define precisely courts have identified a number of factors or elements as aids for determining its applicability to a given set of facts. These factors include: (1) The use of printed

form or boilerplate contracts drawn skillfully by the party in the strongest economic position, which establish industry wide standards offered on a take it or leave it basis to the party in a weaker economic position (*Henningsen v. Bloomfield Motors, Inc.*, [32 N.J. 358, 161 A.2d 69 (1960)], *Campbell Soup Co. v. Wentz*, 172 F.2d 80); (2) a significant cost-price disparity or excessive price; (3) a denial of basic rights and remedies to a buyer of consumer goods (*Williams v. Walker-Thomas Furniture Company*, 350 F.2d 445; 18 ALR 3d 1305); (4) the inclusion of penalty clauses; (5) the circumstances surrounding the execution of the contract, including its commercial setting, its purpose and actual effect (*In re Elkins-Dell Manufacturing Company*, 253 F. Supp. 864, [E.D. Pa.]); (6) the hiding of clauses which are disadvantageous to one party in a mass of fine print trivia or in places which are inconspicuous to the party signing the contract (*Henningsen v. Bloomfield Motors, Inc.*, supra); (7) phrasing clauses in language that is incomprehensible to a layman or that divert his attention from the problems raised by them or the rights given up through them; (8) an overall imbalance in the obligations and rights imposed by the bargain; (9) exploitation of the underprivileged, unsophisticated, uneducated and the illiterate (*Williams v. Walker-Thomas Furniture Company*, supra); and (10) inequality of bargaining or economic power. (See also Ellinghaus, 'In Defense of Unconscionability', 78 Yale L. J. 757; 1 Anderson on the UCC, § 2-302, and cases cited therein.)

"Important to this case is the concept of inequality of bargaining power. The UCC does not require that there be complete equality of bargaining power or that the agreement be equally beneficial to both parties (1 Anderson, § 2-302:11, p. 401). As has been pointed out:

" '[The language of the comment to § 2-302 means] . . . that *mere* disparity of bargaining strength, *without more*, is not enough to make out a case of unconscionability. Just because the contract I signed was proffered to me by Almighty Monopoly Incorporated does not mean that I may subsequently argue exemption from any or all obligation: at the very least, some element of deception or substantive unfairness must presumably be shown.' (78 Yale L. J., *supra*, pp. 766-767.)

"The cases seem to support the view that there must be additional factors such as deceptive bargaining conduct as well as unequal bargaining power to render the contract between the parties unconscionable. In summary, the doctrine of unconscionability is used by the courts to police the excesses of certain parties who abuse their right to contract freely. It is directed against one-sided, oppressive and unfairly surprising contracts, and not against the consequences *per se* of uneven bargaining power or even a simple old-fashioned bad bargain (1 Anderson, *supra*, § 2-302.11, p. 401)." 219 Kan. at 758-60.

See also *Atkinson v. Orkin Exterminating Co.*, 5 Kan. App. 2d 739, 743, 625 P.2d 505 (1981), and *Remco Enterprises, Inc. v. Houston,* 9 Kan. App. 2d 296, 301, 677 P.2d 567 (1984).

Plaintiff does not cite nor has our research disclosed a single case from any jurisdiction where a time limitation requirement in a double indemnity rider has been invalidated on the basis of unconscionability. We conclude the concept of unconscionability is inapplicable to the issue before use.

The principal basis upon which plaintiff seeks to invalidate the time limitation contained in the double indemnity riders is her claim that such limitations are against the public policy of the State of Kansas.

Ninety-day or one-hundred-twenty-day limitations in accidental death double indemnity provisions appear to have been quite standard in life insurance policies for many years.

39 A.L.R. 3d 1311, Accident Insurance—Time Limitations, states at page 1313:

"Ordinary rules respecting the validity and construction of insurance contracts have been applied to the particular clauses which are considered in the present subject of annotation.

"Clauses limiting payments for accidental death or loss of a member to cases in which the death or loss occurred within a specified time after the accident *have been uniformly upheld when attacked on the ground that they are unreasonable, unconscionable, or against public policy.* They have also been upheld against contentions that they are ambiguous or that they conflict with other provisions of the policy, or with its general object and tenor." (Emphasis supplied.)

This statement appears to be correct as of 1971, the date the book was published. A few jurisdictions deciding the issue after that date have held such time restrictions void as against public policy, usually based upon the particular facts presented. With this background, we turn to the specific public policy arguments presented by plaintiff herein.

Plaintiff argues that recent advances in medicine often result in the prolongation of life after accidental injury to such a degree that the ninety-day accidental death double indemnity limitation is no longer realistic and is against the public policy of Kansas. In support of her argument, she cites the Natural Death Act, K.S.A. 65-28,101 *et seq.* The legislative declaration relative to the act is contained in K.S.A. 65-28,101 as follows:

"The legislature finds that adult persons have the fundamental right to control the decisions relating to the rendering of their own medical care, including the decision to have life-sustaining procedures withheld or withdrawn in instances of a terminal condition.

"In order that the rights of patients may be respected even after they are no longer able to participate actively in decisions about themselves, the legislature hereby declares that the laws of this state shall recognize the right of an adult person to make a written declaration instructing his or her physician to withhold or withdraw life-sustaining procedures in the event of a terminal condition."

K.S.A. 65-28,108 assures that a declaration under the Act shall not be considered a suicide, providing in part:

"(a) The withholding or withdrawal of life-sustaining procedures from a qualified patient in accordance with the provisions of this act shall not, for any purpose, constitute a suicide and shall not constitute the crime of assisting suicide as defined by K.S.A. 21-3406.

"(b) The making of a declaration pursuant to K.S.A. 65-28,103 shall not affect in any manner the sale, procurement, or issuance of any policy of life insurance, nor shall it be deemed to modify the terms of an existing policy of life insurance. No policy of life insurance shall be legally impaired or invalidated in any manner by the withholding or withdrawal of life-sustaining procedures from an insured qualified patient, notwithstanding any term of the policy to the contrary."

The plaintiff argues that a person injured in an accident might base his or her decision not to seek life-sustaining procedures on the ninety-day accidental death double indemnity limitation in his or her life insurance policy and that this is against the clearly stated public policy contained in K.S.A. 65-28,101. This interpretation appears to broaden the public policy expressed in K.S.A. 65-28,101 into an area not encompassed by its limited purpose. The Natural Death Act gives a person a choice relative to the use of life-sustaining procedures if he or she has a terminal condition. Other than decreeing that the decision not to undergo such procedures shall not be considered a suicide for insurance or other purposes, it does not undertake to restrict the factors to be considered by the individual making the decision. There is nothing in the Act which indicates that by its passage the legislature intended to invalidate the time limitation requirements frequently contained in accidental death double indemnity provisions commonly found in life insurance policies. The same argument raised by plaintiff herein, if successful, could be used to nullify exclusions, limitation of covered services, etc., contained in medical and health care insurance policies and Medicare. Such result could have a devastating effect upon already beleaguered providers of such coverages and would undoubtedly raise the cost of future coverage still higher.

The few courts in other jurisdictions which have invalidated such limitations on public policy grounds have generally not done so on an across-the-board basis. Rather, the limitation is held not to be enforceable under the facts presented in the particular case.

*Kirk v. Financial Security Life Ins. Co.*, 75 Ill. 2d 367, 27 Ill. Dec. 332, 389 N.E.2d 144 (1978), warrants close scrutiny. The

insured, John Kirk, was severely injured in an automobile accident. Ninety-two days later Mr. Kirk died from his injuries. His life insurance policy had a ninety-day limit on the accidental death double indemnity benefit. Decedent's widow challenged the denial of her double indemnity claim on the basis of public policy. The arguments made in *Kirk* are remarkably similar to those before us and the opinion of the Illinois Supreme Court contains an excellent summary of the applicable law. In *Kirk*, the court stated:

"The primary question posed is whether this unambiguous 90-day requirement violates Illinois public policy. Similar limitation periods appear in many life insurance policies and until very recently every jurisdiction faced with a challenge to these provisions had upheld them. (*Contois v. State Mut. Life Assur. Co.* (7th Cir. 1946), 156 F.2d 44, 46 (Ill.); *Spaunhorst v. Equitable Life Assur. Soc. of United States* (8th Cir. 1937), 88 F.2d 849, 851 (Mo.); *Barnett v. Travelers' Ins. Co.* (8th Cir. 1929), 32 F.2d 479, 480 (Mo.); *Kerns v. Aetna Life Ins. Co.* (8th Cir. 1923), 291 F. 289, 290 (S.D.); *Orrill v. Prudential Life Ins. Co. of America* (N.D. Cal. 1942), 44 F. Supp. 902, 904; *Brown v. United States Casualty Co.* (N.D. Cal. 1899), 95 F. 935, 936; *Bennett v. Life & Casualty Insurance Co.* (1939), 60 Ga. App. 228, 3 S.E.2d 794, 795; *Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, 303; *Hickey v. Washington National Insurance Co.* (1939), 302 Ill. App. 388; *Mullins v. National Casualty Co.* (1938), 273 Ky. 686, 688-89, 117 S.W.2d 928, 930; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185, 1188; *Drinan v. Clover Leaf Casualty Co.* (1919), 207 Mich. 677, 679, 175 N.W. 176, 177; *Hudson v. Mutual Ben. Health & Acc. Ass'n* (Mo. App. 1944), 184 S.W.2d 188, 189; *Weickselbaum v. Commercial Travelers Mut. Acc. Ass'n of America* (Sup. Ct. Kings County 1954), 129 N.Y.S.2d 612, 612-13; *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645; *Douglas v. Southwestern Life Insurance Co.* (Tex. Civ. App. 1964), 374 S.W.2d 788, 791; *Crowe v. North American Acc. Ins. Co.* (Tex. Civ. App. 1936), 96 S.W.2d 670, 671; 1A J.Appleman, Insurance sec. 612 (1965); Annot., 39 A.L.R.3d 1311 (1971).) Recently, at least two courts have held these provisions invalid on public policy grounds. *Burne v. Franklin Life Insurance Co.* (1973), 451 Pa. 218, 301 A.2d 799; *Karl v. New York Life Insurance Co.* (1977), 154 N.J. Super. 182, 381 A.2d 62. [Actually, *Karl* was determined primarily on the basis of an interpretation of the time limit as an ambiguous provision].

"Though this precise issue has not previously been addressed by this court, several Illinois appellate courts have approved this type of time limitation. . . .

"Until 1973 the Illinois cases reflected a unanimous rule. In that year the primary case relied on by the plaintiff, *Burne v. Franklin Life Insurance Co.*, held that a 90-day time limitation for double indemnity accidental death benefits violated public policy. In *Burne*, the assured was kept alive 4 ½ years by sophisticated medical techniques. The insurer conceded that the sole cause of death was the accident, but argued that under the 90-day requirement the assured's death was outside the policy. The Pennsylvania Supreme Court held

that requirement invalid. First, the court noted that the leading cases were well before modern advances in medical science. (451 Pa. 218, 301 A.2d 799, 801.) Such advances had, in that court's view, made the 90-day limit obsolete. Second, the court felt that extraneous matters, such as the eventual receipt of insurance proceeds, should not be a factor in the deliberations on whether and how to prolong life. (451 Pa. 218, 301 A.2d 799, 802.) Third, the court considered it fundamentally unjust to allow full recovery to a beneficiary who has endured little or no prolonged expense and anxiety, and yet allow no recovery for those who suffer the longest and endure the greatest expense. 451 Pa. 218, 301 A.2d 799, 801-02.

"In a similar case, a trial level court in New Jersey followed *Burne* and held both a 90-day and 120-day limitation invalid. (139 N.J. Super. 318, 353 A.2d 564.) A New Jersey appellate court upheld that decision on the premise that the life policy's underlying purposes would not be frustrated where it was conceded that the assured died as a result of the accident, albeit beyond the 90-day limit. 154 N.J. Super. 182, 381 A.2d 62.

"In contrast, the Ohio Supreme Court and Louisiana appellate court have recently rejected the policy arguments of Pennsylvania and New Jersey and upheld 90-day limitations. *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645 n. 3; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185.

"The long line of authority supporting these time-limitations requirements in insurance policies, the recent departure from these holdings by the Pennsylvania Supreme Court in *Burne* and the New Jersey appellate court in *Karl,* and the subsequent rejection of *Burne* by the Ohio Supreme Court and Louisiana appellate court indicate that the issue is not one where there are clearly defined and objective rules and standards of public policy. This is not a matter where public policy is so clear that objective criteria compel us to hold the 90-day limitation invalid. Furthermore, public policy of a State or the nation is found imbedded in its constitution and its statutes, and, when these are silent on a subject, in the decisions of the courts. [Citations omitted.] The legislature has not been silent on the matter of public policy as it relates to the contents of insurance policies. The Director of the Department of Insurance is required by statute to review policies of insurance in certain categories and approve or disapprove them, based on criteria including the established public policy of this State. . . .
. . . .

"Here, we may assume that the Financial Security Life insurance policy was approved pursuant to section 143 by the Department of Insurance. (*Bernardini v. Home & Automobile Insurance Co.* (1965), 64 Ill. App. 2d 465, 467.) . . . .

"The approval of the use of 90-day limitation periods in policies of insurance by the Department, although not conclusive upon the courts, is, however, entitled to great weight as against the contention that such a provision is against public policy. . . . The long-established approval of the usage of time limitations in insurance policies similar to that contained in the policy in question, in the absence of any action by the legislature countermanding the approval by the Director of such provisions, is strong evidence that the General Assembly does not consider the use of such limitation periods violative of public policy.

"That this 90-day provision is a matter best left to the legislature and

Department of Insurance is clear from an analysis of the issues involved. While there may be valid reasons which support the validity of the decisions in *Burne* and *Karl* (see Note, *Death Be Not Proud—The Demise of Double Indemnity Time Limitations*, 23 DePaul L. Rev. 854 (1974)), there are numerous policy arguments favoring the 90-day limitation.

"It has been held in several cases that these provisions minimize uncertainty as to the cause of the assured's death. (*Clarke v. Illinois Commercial Men's Association* (1913), 180 Ill. App. 300, 303; see also *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185; *Rhoades v. Equitable Life Assurance Society of the United States* (1978), 54 Ohio St. 2d 45, 374 N.E.2d 643, 645.) Without the finality of a time limitation, the accompanying uncertainty as to the cause of death as the time between that event and the injury increases will spawn a substantial amount of litigation as beneficiaries attempt to establish some injury-connected cause of their insured decedent's death.

"Also, several cases have acknowledged that these provisions reflect risk decisions. An insurance company sets policy rates based on the risks of recovery. As a consequence, the 90-day limitation, which clearly affects the risk, is reflected in the rate charged an assured. Thus, these cases hold, as a matter of contract law, that the assured is receiving what he has paid for. The limitation is thus reasonable as a reflection of the insurer's risk. *Shelton v. Equitable Life Assurance Society of United States* (1961), 28 Ill. App. 2d 461, 464; *Brown v. United States Casualty Co.* (N.D. Cal. 1899), 95 F. 935, 937; *Fontenot v. New York Life Insurance Co.* (La. App. 1978), 357 So. 2d 1185, 1188.

"We find unpersuasive the argument that the limitations on the time within which death must occur should be abandoned in light of the advancements made by the medical profession in the ability to prolong life or to defer death. (See *Burne v. Franklin Life Insurance Co.*; Note, *Death Be Not Proud—The Demise of Double Indemnity Time Limitations*, 23 DePaul L. Rev. 854, 860 (1974).) Regardless of the state of the art of healing or preserving life, there has always been and there always will be those who will die on the 89th day following the injury and those who will die on the 91st day following an injury. In the cases cited above, we note that this problem has been in litigation since prior to the advent of this century.

"The suggestion that the injection of financial matters may detrimentally affect decisions by double indemnity life insurance beneficiaries is not substantiated by the case at bar. Indeed, the beneficiary appears to have done precisely the opposite of what she argues. She maintained her husband, despite the policy, for more than 90 days. The 90-day requirement did not act as a disincentive in the provision of medical services.

"As a general matter, the suggestion that persons will be encouraged to 'pull the plug' is already dealt with by the concept of 'insurable interest.' A person may not purchase insurance on another unless he has a positive incentive to keep that person alive. (*Colgrove v. Lowe* (1931), 343 Ill. 360; *Warnock v. Davis* (1882), 104 U.S. 775, 26 L.Ed. 924.) The law already has a requirement that will protect the assured.

"If the 90-day provision is invalid as injecting financial motives into life-saving decisions, then a whole host of other provisions and laws must be invalidated. What of term insurance? What of the termination of some insurance benefits at

age 60? What of life insurance itself? Justice Holmes, speaking of insurable interest, noted aptly:

" 'The law has no universal cynic fear of the temptation opened by a pecuniary benefit accruing upon a death. It shows no prejudice against remainders after life estates, even by the rule in *Shelley's Case.' Grigsby v. Russell* (1911), 222 U.S. 149, 155-56, 56 L.Ed. 133, 137, 32 S.Ct. 58, 59.

"The implications of a decision invalidating 90-day limitations are quite broad. See, *e.g., INA Life Insurance Co. v. Pennsylvania Insurance Department* (1977), 31 Pa. Commw. 416, 376 A.2d 670 (invalidation of *all* time limits in accidental death provisions).

"It is clear on review of the many arguments that favor and oppose the 90-day restriction that continued approval is best left to the Department of Insurance and the legislature. The regulation of insurance has long been the prerogative of the legislature, and we should not usurp that authority. *Stofer v. Motor Vehicle Casualty Co.* (1977), 68 Ill. 2d 361." 75 Ill. 2d at 371-79.

We note K.S.A. 1984 Supp. 40-401, which expressly authorizes:

"[A]ny such [life insurance] company may provide for the payment of a larger sum if death is caused by accident than if it results from any other causes."

We note, also, K.S.A. 1984 Supp. 40-420, which provides life insurance policies shall contain:

"(2) A provision that, except as otherwise expressly provided by law, the policy together with the application, if a copy thereof be endorsed upon or attached to the policy, *shall constitute the entire contract between the parties and shall be incontestable after it has been in force during the lifetime of the insured for a period of not more than two years* from its date, except for nonpayment of premiums and except for violations of the conditions, if any, relating to naval or military service, or to aeronautics and, *except also at the option of the company, with respect to provisions relative to benefits in the event of total and permanent disability and provisions which grant additional insurance specifically against death by accident or by accidental means . . . .*" (Emphasis supplied.)

Additionally K.S.A. 40-216 provides:

"A copy of the bylaws and amendments thereto of insurance companies organized under the laws of this state shall also be filed with and approved by the commissioner of insurance. The commissioner may also require the filing of such other documents and papers as are necessary to determine compliance with the laws of this state. *No contract of insurance or indemnity shall be issued or delivered in this state until the form of the same has been filed with the commissioner of insurance, nor if the commissioner of insurance gives written notice within thirty (30) days of such filing, to the company proposing to issue such contract, showing wherein the form of such contract does not comply with the requirements of the laws of this state . . . .*" (Emphasis supplied.)

We believe the rationale of the Illinois Supreme Court as

expressed in the above cited portion of its opinion in *Kirk v. Financial Security Life Ins. Co.* is sound. Cases decided in other jurisdictions since *Kirk* add nothing. Like Illinois, Kansas requires submission of life insurance policy forms to a supervising branch of state government (here, the Commissioner of Insurance where, presumably, the ninety-day limitation at issue herein was approved).

We conclude the ninety-day limitation on the life insurance accidental death double indemnity provision is not contrary to the public policy of Kansas. Such limitations are long-established provisions in life insurance policies. If the same are to be invalidated, it is a matter best left to the legislature and the Commissioner of Insurance.

The plaintiff's final argument in support of her claim under the double indemnity provision is that the "processes of nature" doctrine should be applied.

Kansas has applied the processes of nature doctrine to disability benefits. In *Commercial Travelers v. Barnes*, 72 Kan. 293, 80 Pac. 1020 (1905), the court stated in Syl. ¶ 3:

"3. The word 'immediately,' as applied to the language of the indemnity contract stated in the first paragraph of this syllabus is not synonymous with 'instantly,' 'at once,' and 'without delay.' A disability is immediate, within the meaning of such contracts, when it follows directly from an accidental hurt, within such time as the *processes of nature* consume in bringing the person affected to a state of total incapacity to prosecute every kind of business pertaining to his occupation." (Emphasis supplied.)

See also *Rabin v. Business Men's Association*, 116 Kan. 280; 226 Pac. 764 (1924); *Thomas v. Mutual Benefit Health & Acc. Ass'n*, 136 Kan. 802, 18 P.2d 151 (1933).

Plaintiff urges this court to extend the doctrine to double indemnity life insurance claims.

The difficulty with this argument lies in the fundamental difference between the issue presented in disability cases and the issue before us. In the disability cases where the doctrine has been applied, the court has been called upon to determine what is meant by the words "immediate" or "immediately disabled" contained in the policy. The processes of nature doctrine is utilized to construe an ambiguous term contained in the policy in light of the facts presented. There is no ambiguity in the ninety-day limitation in the double indemnity life insurance provision before us. Plaintiff is urging us to invalidate unambig-

uous provisions in a life insurance policy which bar her claims for payment of double indemnity on a doctrine of construction utilized to construe ambiguous terms in disability policies. We conclude this issue is without merit.

The judgment is affirmed.