**In the Matter of SENTRY INSURANCE PAYBACK PROGRAM FILING.**

No. C4-89-837.

Court of Appeals of Minnesota.

Nov. 7, 1989.

Carl E. Norberg, St. Paul, for appellant Sentry Ins. Co.

Hubert H. Humphrey, III, Atty. Gen., Karyn M. (Kim) Greene, Sp. Asst. Atty. Gen., St. Paul, for respondent Minnesota Dept. of Commerce.

Heard, considered and decided by LANSING, P.J., and FOLEY and IRVINE *, JJ.

## OPINION

LANSING, Judge.

Sentry Insurance appeals the Commerce Commissioner's order disapproving its Payback endorsement after a hearing under the Administrative Procedure Act, Minn. Stat. § 14.01 *et seq.* Sentry contends the Commissioner's action is not supported by substantial evidence and is arbitrary and capricious. We conclude that the record as a whole contains substantial evidence that the endorsement is misleading and violates public policy and affirm the Commissioner's order.

## FACTS

Sentry Insurance, a Wisconsin mutual company licensed in Minnesota, applied to the Department of Commerce for permission to offer a Payback endorsement to its standard automobile insurance policy. The endorsement has two independent features which are packaged together. They are not offered separately.

The first feature provides that if Sentry makes no payments on any claims filed by the insured for a period of five years, then at the end of five years, the insured will receive a payback payment equaling one-half of the first year's premium. In the following year, if there are still no claims, one-half of the second year's premium will be refunded. This rebate continues on an annual basis unless the insured files a claim on which Sentry makes any payment. If this occurs, the insured cannot receive a payback payment for five years. In addition, the insured cannot receive a payback payment if Sentry has established a reserve for a claim until the claim is resolved without payment.

The second feature provides that the insured will be excluded from collision coverage, except for lienholder's claims, if the insured's car is involved in an accident and the driver is "legally intoxicated." The exclusion is not limited to accidents in which the named insured is driving.

The Payback endorsement consists of one page and is reproduced below:

### Sentry's Payback Program

The Payback Policy is for people who drive carefully and don't drive if they've had too much to drink. We ask you to sign this Endorsement so that we're certain you are aware of the consequences if you have an accident while legally intoxicated.

This Endorsement states that your collision coverage is excluded if the driver of your car is legally intoxicated.

Collision coverage pays for damages to the vehicle and its equipment when it hits or is hit by another car, another object or it rolls over.

Please note the collision coverage is excluded only if the driver is legally intoxicated.

All other coverages remain in effect.

For cars that are financed or leased, the policy will always cover the lending institution's or lessor's interest in the car, even if the driver is intoxicated.

### Payback Agreement

Because *you* have agreed not to drive while legally intoxicated, Sentry agrees to pay *you* at the end of each consecutive five-year period during which no claim or losses have been incurred under *your* Payback Policy one-half of the premium paid for the first year of each such five-year period.

Sentry will renew *your* policy under this program as long as you continue to:

---

* Acting as judge of the Court of Appeals by appointment pursuant to Minn. Const. art. VI, § 2.

—Reside in a state in which this program is approved.

—Remain claim and violation free.

**Exclusionary Endorsement**

Your collision insurance is excluded if the operator of the *car* we insure is *legally intoxicated* at the time of a *car accident.*

This exclusion does not apply to the interests of the lessor or lienholder designated on the declarations page.

The following definition is added to the policy: Legally intoxicated means a blood alcohol content of .10% or more. An operator who refuses to take a test for blood alcohol shall be conclusively presumed to be legally intoxicated.

(Emphasis in original.)

The Payback program is part of the preferred auto insurance market which offers discounts to drivers with clean records. This market typically offers preferred rates 15–20% off a company's standard rate. Sentry proposed to offer a discount of 17% off its standard rate.

After unsuccessfully seeking approval for the Payback endorsement from the Commerce Department, Sentry requested a hearing under the administrative procedure act. At the hearing the department presented evidence of four separate bases for disapproving the endorsement as misleading and violative of public policy under Minn.Stat. § 70A.06, subd. 2 (1988):

(1) The Payback Endorsement when tied to a DWI policy is misleading and violative of public policy in that, among other things, it creates the false impression that good driving and/or sober driving will lead to a rebate equaling one-half of the first year's premium when this is not necessarily the case.

(2) The Payback Endorsement is misleading and violative of public policy in that it may discourage insureds from filing small claims and it creates confusion regarding eligibility for the "payback" in the event of not-at-fault claims, claims due to natural causes, and personal injury claims arising in vehicles owned by someone other than the insured.

(3) The waiver of collision coverage for any "driver of your car" who is involved in an accident while legally intoxicated is misleading and violative of public policy because the term "driver of your car" is not limited to the named insured but includes minor children of the insured and all other individuals who drive the insured's car.

(4) The waiver of collision coverage is violative of public policy because a potential insured's lack of interest in this DWI policy could be used by insurance companies and agents to discriminate against the potential insured with respect to other forms of coverage.

The administrative law judge concluded that the Payback endorsement was not misleading and that the collision exclusion feature did not violate public policy. On the final issue of whether the payback feature violated public policy, the ALJ concluded that Sentry had not met its burden to show that it did not. In an accompanying memorandum the ALJ recommended that the Commissioner approve the endorsement because the opportunity to reduce insurance premiums by safe and sober driving works in favor of the public.

The Department filed exceptions to the ALJ's findings and in the final decision the Commissioner concluded that the form was misleading and violative of public policy. The Commissioner adopted his own findings to support these conclusions and prepared a memorandum explaining his reasons for rejecting various findings and conclusions of the ALJ. Sentry appeals.[1]

## ISSUES

1. Is the Commissioner's decision that the Payback endorsement is misleading supported by substantial evidence?

2. Is the Commissioner's decision that the Payback endorsement is violative of

---

1. The Department moved to strike a portion of Sentry's reply brief and appendix containing facts not part of the record below. Because the material is not part of the record, we grant the motion. *McKee v. Cub Foods, Inc.,* 380 N.W.2d 233, 235 (Minn.Ct.App.1986).

public policy supported by substantial evidence?

3. Is the Commissioner's decision arbitrary and capricious?

## ANALYSIS

### I

■ The Commissioner's conclusion that the Payback endorsement form is misleading is based on two central findings:

(1) the endorsement is misleading because it creates the false impression that the insured will be rewarded if he continues to drive safely and soberly when in fact, a safe sober driver may be penalized under the program if he unknowingly lends his car to a drunk driver; and (2) it is inherently misleading to package the collision exclusion and the Payback agreement in one endorsement.

In determining whether these findings are supported by substantial evidence, we rely on the Minnesota interpretation of substantial evidence found in *Taylor v. Beltrami Electric Cooperative, Inc.*, 319 N.W.2d 52, 56 (Minn.1982):

We view that by the "substantial evidence" test is meant (1) such relevant evidence as a reasonable mind might accept as adequate to support a conclusion, (2) more than a scintilla of evidence, (3) more than "some evidence," (4) more than "any evidence," and (5) evidence considered in its entirety.

*Id.* (quoting *Reserve Mining Co. v. Herbst*, 256 N.W.2d 808, 825 (Minn.1977)).

Neither this court nor the Minnesota Supreme Court has interpreted the meaning of "misleading" as used in Minn.Stat. § 70A.06, subd. 2 (1988). The dictionary definition adopted by the ALJ is "to lead into a wrong direction or into a mistaken action or belief." *Webster's Third New International Dictionary*, 1444 (1971). Other jurisdictions have defined "misleading" in a regulatory context. Statements are misleading if they "tend to lead astray or into error, without any specific intent to deceive." *People v. Wahl*, 39 Cal.App.2d Supp. 771, 773, 100 P.2d 550, 551 (1940) (false advertising statute). The determina-

tion of whether a statement is misleading is based on the overall impression created by the statement. *See American Home Products Corp. v. Johnson & Johnson*, 654 F.Supp. 568, 590 (S.D.N.Y.1987). The total impact may be deceptive or misleading even though the statement is technically not false. *U.S. v. One Device, More or Less, Ellis Micro–Dynameter*, 224 F.Supp. 265, 268 (E.D.Pa.1963).

To support its contention that the endorsement is misleading, the department presented witnesses who testified that the language of the form was misleading and that the form gives the impression that the Payback endorsement relates to safe, sober driving and not to the claims record. However, it is the claims record that determines whether a payback occurs. An insured who was a safe, sober driver would lose the payback if the insurer received a claim for a towing charge, damages to the vehicle from an act of God, injuries to the insured's child sustained in a school bus accident, or damages to a windshield from vandalism. The testimony indicated that this confusion is compounded by the dominance of references to drinking and driving and safe driving and the minimal reference to claims.

The Commissioner found that when the collision exclusion feature is read in conjunction with the payback feature of the Payback endorsement, the insured would erroneously form the impression that the loss of collision coverage occurs only when the insured is legally intoxicated. For instance, the first section says: "We ask you to sign this Endorsement so that we're certain you are aware of the consequences if you have an accident while legally intoxicated." However, the collision exclusion operates when *any* permitted driver is legally intoxicated. The collision exclusion states that collision insurance is excluded if the "operator of the car we insure" is legally intoxicated. The Commissioner concluded that this language could cause an insured to believe that "operator" does not include drivers other than the insured when in fact it does.

The Commissioner also concluded it was inherently misleading to package the payback feature and the collision exclusion feature in one endorsement. A Sentry witness testified that these two items were packaged together to target people who act, drive and drink responsibly. Three witnesses from the Department testified that it was confusing or misleading to package the collision exclusion feature, which relates to sober driving, and the payback feature, which relates to claims history, together. The Department also pointed out that the marketing materials tie the sober driving and payback features together. This problem is magnified when the insured does not purchase collision insurance, which is the only feature that relates to driving while intoxicated. Without that coverage, the Payback endorsement is not related to driving while intoxicated.

In evaluating whether there is substantial evidence to support the Commissioner's findings, we recognize that this standard has its genesis in the historical deference accorded to administrative agencies in their area of expertise. *Hennepin County Court Employees Group v. Public Employment Relations Board*, 274 N.W.2d 492, 494 (Minn.1979); *see also Cable Communications Board v. Nor-West Cable Communications Partnership*, 356 N.W.2d 658, 668 (Minn.1984). We also recognize the Commissioner's and the Department's experience in handling consumer inquiries and complaints and evaluating forms relating to automobile insurance. Taking into account the entire record, the agency's expertise, and the language of the form on its face, we conclude that there is substantial evidence supporting the Commissioner's conclusion that the endorsement and the packaging of the endorsement are misleading as to the circumstances under which the insured is entitled to a payback and the extent of the collision exclusion coverage.

## II

■ The second issue is whether the Commissioner's determination that the Payback endorsement violates public policy is supported by substantial evidence. This court has previously stated that Minn.Stat. § 70A.06 gives the Commissioner "the power and duty to review and approve all policy forms issued in Minnesota" and that this statutory authority "need not be given a cramped reading." *In the Matter of State Farm Mutual Automobile Insurance Co.*, 392 N.W.2d 558, 565 (Minn.Ct.App.1986). This authority is based on a recognition of the Commissioner's responsibility to protect consumers. *See Farmer's & Merchants State Bank of Pierz v. Bosshart*, 400 N.W.2d 739, 744 (Minn.1987).

Courts in other states have accorded insurance commissioners and departments broad authority to decide whether insurance forms comply with state public policy. *See Hawes v. Kansas Farm Bureau*, 238 Kan. 404, 710 P.2d 1312, 1320 (1985); *Kirk v. Financial Security Life Insurance Company*, 75 Ill.2d 367, 27 Ill.Dec. 332, 335, 389 N.E.2d 144, 147 (1978); *Survivors Benefit Insurance Co. v. Farmer*, 514 S.W.2d 565, 576 (Mo.1974); *Workman v. Great Plains Insurance Company*, 189 Neb. 22, 200 N.W.2d 8, 11 (1972); *Progressive Mutual Insurance Company v. Taylor*, 35 Mich.App. 633, 193 N.W.2d 54, 58 (1971).

The Commissioner found that the payback feature violates public policy because the insured's cost is increased based on claims for which the insured is not at fault. The Department argues that the entire regulatory framework for automobile insurance is premised on insureds not losing benefits, facing increased premiums, or otherwise encountering penalties because of events that are not the insured's fault. Sentry characterizes the loss of a payback as a contingent benefit, analogous to a rebate or dividend, because it is an additional payment to the insured. *See* Minn. Stat. § 72A.08 (1988).

Minnesota's automobile insurance statutes limit the reasons a policy may not be renewed. Minn.Stat. § 65B.17, subd. 2 (1988), and Minn.R. 2770.7500–.8500 (1989). Nonrenewal may not be based on claims paid when the insured is not at fault or

claims paid without determining fault. *See* Minn.R. 2770.7800 (1989).

The Department contends the Payback endorsement operates as a surcharge. A surcharge is "any increase in premium for a policy, including the removal of an accident-free or claim-free discount, based upon an accident or traffic violation." Minn.Stat. § 65B.133, subd. 1(e) (1988). The Department does not approve policy provisions that surcharge based on events not the insured's fault. This practice is based on the same public policy expressed in the nonrenewal statutes and rules.

Although there may be support for alternative characterizations of the Payback endorsement, there is substantial evidence in the record to support the Commissioner's interpretation that it is a surcharge or penalty. The existence of more than one opinion on a matter will not invalidate an agency's decision. *See Village of Goodview v. Winona Area Industrial Development Association*, 289 Minn. 378, 381, 184 N.W.2d 662, 664 (1971) (citations omitted). Accepting this interpretation, the record supports the determination that it is a violation of public policy for an insured to lose eligibility for the payback based upon claims not the insured's fault.

The Commissioner also found:

> It is unfair and misleading, and therefore violative of public policy, to sell insureds towing coverage and low deductibles expecting that they will not use the coverage. It is also unfair and misleading, and therefore violative of public policy, to include such a provision when another provision requires that the insured report all claims.

A Sentry witness acknowledged that most insureds receive a better value if they select higher deductibles and no towing coverage, and testified Sentry trains its agents accordingly. Some insureds, who are presumably risk-adverse, prefer to be reimbursed for smaller losses if they occur, despite possible forfeiture of the Payback program. These insureds still receive the benefit of a 17% premium discount. This, Sentry contends, is an economic decision which rests with the insured.

The Department contends that the 17% premium discount is not the attraction of the endorsement. It asserts that it is unfair and misleading to spark a consumer's interest in a program by promising a payback, and then design the program so that if the consumer files a small claim, the payback will be lost, particularly when the effect is not clearly stated. Additionally, circumstances compel reporting. The insurance policy provides that when an accident occurs, "you or someone on your behalf must notify us as soon as possible." There is no dollar limitation on this requirement. Under Minnesota law, there are circumstances in which failure to report an accident involving a small claim could result in cancellation of the policy. Minn. Stat. § 65B.15, subd. 1(6).

The Department also offered testimony that in most other policies, there are no negative consequences to filing claims below $300 or $500; it is only when claims above this amount are filed that the insured's premium will be increased ("surcharged"). Under the Payback endorsement, there is always the disincentive of filing a small claim because every time such a claim is received, the insured is ineligible for the payback for five years. Sentry recognizes that its policy encourages insureds to self-insure for small claims. However, Sentry asserts that the policy is not misleading and the insured is capable of calculating the costs and benefits of submitting or not submitting a claim.

Sentry argues that there are four reasons why this policy does not violate public policy: (1) Minn.Stat. § 65B.15, subd. 1(6) applies to required written notices of loss and Sentry, "as a practical matter," does not require written notice of small losses; (2) the Department admits other previously approved policies tend to discourage reporting small claims; (3) nothing in Minnesota law prohibits insureds from self-insuring; and (4) the reduction in small claims filing is reflected in Sentry's 17 percent premium discount granted to payback policyholders.

Although Sentry's arguments have probative weight, they do not disprove the

substantial evidence which supports the Commissioner's determination that these provisions violate public policy.

Finally, the Commissioner concluded that the Sentry Insurance Payback Endorsement is against public policy because it could be used as an underwriting device to force safe drivers who do not elect the coverage to take risk coverage. The Commissioner asserts that there is a concern that safe, sober drivers who qualify for the Payback endorsement but choose not to purchase it may discover Sentry will not sell them any insurance. If Sentry is allowed to exclude collision coverage for traffic violations, the Commissioner believes other insurance companies will follow suit and create other collision coverage exclusions based on traffic violations. The Commissioner concludes that it is unfair to exclude collision coverage based on irresponsible driving conduct of someone other than the insured.

Sentry asserts that this is speculative. Although we agree that it relates only to possible future events, it is not unreasonable for the Commissioner to theorize that it would be violative of public policy to allow insurance provisions which could erode collision coverage as it currently exists in Minnesota.

We view the record in light of the Commissioner's particular responsibilities to apply public policy considerations. The public policy considerations expressed by the Commissioner are not unreasonable and are supported by substantial evidence in the record.

### III.

■ Sentry argues that the conclusion of the Commissioner that the Endorsement is misleading and against public policy is arbitrary and capricious because the Commissioner rejected the conclusions and recommendations of the ALJ on those issues which were the subject of the hearing and added his own conclusions on issues that were not the subject of the hearing. An appellate court will not interfere unless an agency has acted arbitrarily or capriciously so that its determination represents its will

and not its judgment. *Bryan v. Community State Bank of Bloomington*, 285 Minn. 226, 234, 172 N.W.2d 771, 776 (1969).

■ An administrative law judge's report and recommendations should not be rejected summarily without reasons, and failure to give reasons has been viewed as evidencing the agency's desire to exercise its will and not its judgment. *Beaty v. Minnesota Board of Teaching*, 354 N.W.2d 466, 472 (Minn.Ct.App.1984). However, the Commissioner attached a memorandum to his findings, conclusions and order, in which he recognized that his findings differed from those of the ALJ, and explained how they were supported by the record. The Commissioner also discussed and commented on various findings and conclusions of the ALJ, and made it clear why he made the decision he did, rather than adopting the ALJ's recommendations. There is no showing the Commissioner was arbitrary and capricious in rejecting the ALJ's conclusions and recommendations.

### DECISION

The order of the Commissioner disapproving Sentry's Payback Program insurance form on the grounds that it was misleading and violative of public policy is affirmed.

Affirmed.