(3 P.3d 97)

No. 84,023

KAZUKO STOCKHAM and KATHY STOCKHAM, *Appellants*, v. LIFE INSURANCE COMPANY OF NORTH AMERICA and ADVANCE INSURANCE COMPANY, *Appellees*.

Opinion filed June 9, 2000.

*Jack Shelton*, of Wichita, for the appellants.

*Terry L. Unruh* and *Corlin J. Pratt*, of Grace, Unruh & Pratt, L.C., of Wichita, for appellee Life Insurance Company of North America.

*Brenda L. Head*, of Davis, Unrein, Hummer, McCallister, Biggs & Head, L.L.P., of Topeka, for appellee Advance Insurance Company.

Before LEWIS, P.J., MARQUARDT, J., and JOHN P. BENNETT, District Judge, assigned.

LEWIS, J.: The plaintiffs are the wife and daughter respectively of Richard Stockham, deceased. This action was filed to recover life insurance proceeds plaintiffs claim are due as a result of the death of the decedent. The trial court denied recovery, and this appeal followed.

We affirm the decision of the trial court.

This appeal involves group accidental death and dismemberment insurance policies issued to the decedent by his employers. Defendant Life Insurance Company of North America (LINA) provided accidental death and dismemberment policies for employees of the City of Wichita (City). The decedent was employed by the City and, as such, was enrolled in two policies provided by the City and issued by defendant LINA. The decedent quit his job with the City on May 3, 1996. By their own terms, the policies issued by LINA terminated on the next premium date following termination of employment. The policies expired on May 17, 1996. They contained a provision which permitted an employee to convert a group policy to an individual policy if the conversion was accomplished within 31 days after group coverage ended. The LINA policies were never converted. The trial court found no coverage existed under the LINA policies.

On April 30, 1996, the decedent was employed by Maude Carpenter Children's Home (MCCH). MCCH provided a group insurance policy for its eligible employees. The policy was issued by defendant Advance Insurance Company (Advance). On May 14, 1996, decedent submitted an enrollment form for group coverage. On May 23, 1996, decedent was issued a certificate of group insurance with an effective date of June 1, 1996. The decedent died on May 29, 1996. The trial court found that there was no coverage under the Advance policy because it had not become effective on the date of decedent's death.

## THE LINA POLICIES

Plaintiffs argue that the LINA accidental death and dismemberment policies are a type of life insurance policy and that K.S.A. 40-434 is applicable.

The issue raised by the plaintiffs requires us to interpret the statute in question. Interpretation of a statute is a question of law, and this court's review is unlimited. *Hamilton v. State Farm Fire & Cas. Co.*, 263 Kan. 875, 879, 953 P.2d 1027 (1998).

"It is a fundamental rule of statutory construction, to which all other rules are subordinate, that the intent of the legislature governs if that intent can be ascertained. [Citation omitted.] The legislature is presumed to have expressed its intent

through the language of the statutory scheme it enacted. When a statute is plain and unambiguous, the court must give effect to the intention of the legislature as expressed, rather than determine what the law should or should not be. [Citation omitted.] Stated another way, when a statute is plain and unambiguous, the appellate courts will not speculate as to the legislative intent behind it and will not read such a statute so as to add something not readily found in the statute. [Citation omitted.]" *In re Marriage of Killman*, 264 Kan. 33, 42-43, 955 P.2d 1228 (1998).

"The legislature is presumed to intend that a statute be given a reasonable construction, so as to avoid unreasonable or absurd results." *State v. Le*, 260 Kan. 845, Syl. ¶ 4, 926 P.2d 638 (1996).

K.S.A. 40-434 provides, in part:

"No policy of group life insurance shall be delivered in this state unless it contains in substance the following provisions . . .

. . . .

"(8) A provision that if the insurance, or any portion of it, on a person covered under the policy ceases because of termination of employment . . . such person shall be entitled to have issued to him by the insurer, without evidence of insurability, *an individual policy of life insurance without disability or other supplementary benefits* . . . .

. . . .

"(10) A provision that if a person insured under the group policy dies during the period within which he would have been entitled to have an individual policy issued to him in accordance with (8) or (9) above and before such an individual policy shall have become effective, the amount of life insurance which he would have been entitled to have issued to him under such individual policy shall be payable as a claim under the group policy, whether or not application for the individual policy or the payment of the first premium therefor has been made." (Emphasis added.)

We have not been provided with and our research has not revealed any Kansas cases which have previously addressed the applicability of K.S.A. 40-434 to accidental death and dismemberment policies. The decisions cited by the plaintiffs deal with life insurance policies which contain accidental death provisions. See, e.g., *Hawes v. Kansas Farm Bureau*, 238 Kan. 404, 710 P.2d 1312 (1985). The policies in question in this action are of a totally different nature.

It is clear that an accidental death and dismemberment policy is not the same as a life insurance policy. In *Evans v. Provident*

*Life & Accident Ins. Co.*, 249 Kan. 248, 252, 815 P.2d 550 (1991), the Supreme Court found that an accidental death and dismemberment policy which provided coverage for accidental death required a claimant to prove that the cause of death was accidental "in addition to the requirements of proof on an ordinary life insurance policy." We are not dealing in this case with an ordinary life insurance policy.

We conclude that an accidental death and dismemberment policy is not covered by K.S.A. 40-434. K.S.A. 40-434(8) provides that an individual may convert *"an individual policy of life insurance without disability or other supplementary benefits."* The policy in this case does fit into that definition.

" 'The rule of strict construction means that ordinary words are to be given their ordinary meaning.' " *In re Tax Appeal of Alex R. Masson, Inc.*, 21 Kan. App. 2d 863, 868, 909 P.2d 673 (1995) (quoting *Director of Taxation v. Kansas Krude Oil Reclaiming Co.*, 236 Kan. 450, 455, 691 P.2d 1303 [1994]). The plaintiffs' decedent in this case was covered under a group accidental death and dismemberment policy. The policy of life insurance was supplemented by accidental death and dismemberment coverage. K.S.A. 40-434(8) only permits conversion of an individual life insurance policy which has no disability or other supplementary benefits. The group policy issued by defendant LINA was not subject to conversion under K.S.A. 40-434, and we affirm the trial court's decision to that effect.

The plaintiffs argue in their brief that the policies issued by LINA could be converted independent of K.S.A. 40-434. These issues were neither raised nor addressed by the trial court. Issues not raised before the trial court cannot be raised on appeal. *Ripley v. Tolbert*, 260 Kan. 491, 513, 921 P.2d 1210 (1996).

## ADVANCE LIFE INSURANCE POLICY

The trial court held that the Advance policy provided no coverage for the decedent's death as follows:

"Plaintiff's decedent, Richard Stockham, was not a member of the 'Original Enrollment' group and therefore the waiting period applied to him. The waiting period for Mr. Stockham ended on May 30, [1996], one day after his death. Insurance coverage did not commence until June 1, [1996]. The Court does not

reach the issue of failure of consideration because the Court has determined there was no coverage."

We agree with the trial court.

The Advance group insurance policy provides that its benefits would be paid on the death of an "insured employee." The policy provides in pertinent part the following definitions and general provisions:

"INSURED EMPLOYEE means an ELIGIBLE EMPLOYEE of the GROUP POLICYHOLDER for whom the coverages provided by this policy are in effect and:
(1) who is a member of an employee class which is eligible for coverage under this Policy; and
(2) who has completed an enrollment form supplied by the Company.
"ELIGIBLE EMPLOYEE means an employee of the GROUP POLICYHOLDER:
(1) whose employment with the GROUP POLICYHOLDER is the employee's principal occupation;
(2) who is regularly scheduled to work at such occupation at least the minimum number of hours per week shown on the application for group life insurance; and
(3) who has been ACTIVELY AT WORK for at least 15 out of the 20 working days immediately preceding the employee's eligibility date for coverage.
. . . .
"ELIGIBILITY. A Person becomes eligible for the coverage provided by this Policy on the later of:
(1) the Policy's date of issue; or
(2) the first day of the Insurance Month coinciding with or next following the date the employee completes the waiting period as shown on the application for group life insurance.
"EFFECTIVE DATE. Insurance becomes effective on . . . :
(1) the date the Employee becomes eligible for the coverage."

The application for group life insurance provided that there was a company-imposed waiting period of 30 days, except that such waiting period did not apply to original enrollment, and that employees became eligible on the first of the month following the completion of the waiting period.

The plaintiffs argue that the term "original enrollment" is ambiguous. They then propose that such ambiguity should be construed in a manner most favorable to the claimant. The construction advanced by the plaintiffs is that this enrollment was Richard

Stockham's "original enrollment" and that as a result, the policy became effective immediately with no waiting period.

We disagree. Under the argument advanced by the plaintiffs, the decedent would have become eligible for coverage on May 1, 1996, one day after he was hired, if this was his "original enrollment" and no waiting period applied. This argument is at odds with other provisions of the policy. The policy defines an "eligible employee" as one who has been actively at work at least 15 out of 20 working days immediately preceding his or her eligibility date for coverage. On May 1, 1996, the decedent had not been actively at work for at least 15 out of 20 working days and, as a result, was not an "eligible employee." In addition, the decedent had not even completed an enrollment form on May 1, 1996, and did not do so until May 14, 1996.

In any event, the policy issued to the decedent clearly provided that it would become effective on June 1, 1996. The decedent's death occurred on May 29, 1996, 3 days before the policy, by its own terms, became effective.

The argument of the plaintiffs is that the decedent was "eligible" for the insurance on May 1, 1996. This does not establish that the decedent met the additional policy requirements found in the definition of an insured employee or that the plaintiffs are entitled to recover on an accidental death and dismemberment policy which, by its own terms, did not become effective until 3 days after the decedent's death.

We hold that the application of the plaintiffs' decedent was not an "original enrollment" as that term was used in the policy application. We find no ambiguity in construing that term. In addition, the decedent was issued a group policy that bore an effective date of June 1, 1996. Regardless of when the decedent became eligible for insurance as an employee of MCCH, his group life insurance policy did not become effective until after the date of his death.

Affirmed.