**FARMERS & MERCHANTS STATE BANK OF PIERZ, et al., Appellants,**

v.

**Bert BOSSHART, et al., Respondents.**

No. C8–86–1605.

Supreme Court of Minnesota.

Feb. 20, 1987.

Gerald W. Von Korff, St. Cloud, for appellants.

Michael J. Dwyer, Minneapolis, for respondents.

KELLEY, Justice.

The owners of a supper club which had been destroyed by fire brought this action against respondent insurance agents who had sold them a fire insurance policy written by a surplus lines insurer. The owners claim the liability of the agents arises from the Minnesota agents liability law which imposes personal liability on a person who participates in the sale of insurance on behalf of any insurance company which is required to be, but is not, authorized to engage in the business of writing insurance in this state. Minn.Stat. § 60A.17, subd. 12 (1986). That statute exempts liability for agents who sell surplus lines insurance "pursuant to Minn.Stat. § 60A.20," the Surplus Lines Insurance Law.[1] In denying

1. Minn.Stat. § 60A.20 was repealed by Laws 1981, ch. 221, § 15. The provisions of former Minn.Stat. § 60A.20, the Surplus Lines Insur-ance Act, are now found in Minn.Stat. §§ 60A.195–.209 (1986). *See* note 7, *infra.*

the owner's motion for summary judgment, the trial court ruled that Minn.Stat. § 60A.17, subd. 12 is not applicable to Minn.Stat. §§ 60A.195–.209 (1986). The trial court "certified * * * that this finding is important and doubtful." [2] The question raised by the certification is whether an insurance agent who participates in the sale of a fire insurance policy by a "surplus lines" insurer, in violation of the Surplus Lines Insurance Act (Minn.Stat. §§ 60A.195–.209) (1986), is entitled to be exempted from the agent's liability created by Minn.Stat. § 60A.17, subd. 12 (1986). The trial court by "finding," in effect, that Minn.Stat. § 60A.17, subd. 12 (1986) was "not applicable" answered the question in the affirmative. We disagree.

In March of 1983, appellants Charles and Stanley Walker (the Walkers) purchased from Kenneth Vopatek on a contract for deed an establishment known as Shady-brook Supper Club. Additionally, improvements to the premises were financed by a mortgage to Farmers & Merchants State Bank of Pierz (Bank). The Walkers were required by the contract to maintain casualty insurance policies naming the Bank and Vopatek as additional insureds. To comply with that requirement, the Walkers obtained appropriate insurance from the Yosemite Insurance Company, a licensed insurer holding a Certificate of Authority to market property and casualty insurance in the State of Minnesota.

Minnesota's statutory scheme regulating the marketing of insurance contemplates that the insurance company shall ordinarily be licensed. Minn.Stat. § 60A.07, subd. 4 (1986). When a company is properly licensed, the state issues to it a "Certificate of Authority." Minn.Stat. § 60A.051 (1986). The objective of the licensure requirements is ultimately to ensure solvency of the companies to pay losses which might be incurred by Minnesota residents. That objective is furthered by compelling licensed insurers to participate in the Minnesota Insurance Guaranty Association. The Association assesses all licensed companies to create a fund to pay any claims made against any insolvent Guaranty Association members. Additionally, the licensed members of the Association participate in an organized program designed to aid in the detection and notification of the possible insolvency of a member. *See generally* Minn.Stat. §§ 60C.01–.20 (1986).

However, certain insurance coverages desired by insureds are not always available from regularly authorized and licensed insurers. To meet this demand, Minnesota has created an exception to the general rule that only licensed and authorized insurers may market policies in the state by enactment of the Surplus Lines Insurance Act. 1963 Minn.Laws, ch. 385, originally codified at Minn.Stat. §§ 60.931–.947, and then at § 60A.20, now Minn.Stat. §§ 60A.195–.209 (1986). The Surplus Lines Insurance Act permits certain licensees, who are specially regulated agents and brokers, to place insurance with out-of-state insurers not licensed and who do not have a Certificate of Authority to write insurance in Minnesota.

The Yosemite policy provided fire insurance coverage to the Walkers through September 1985. However, in November 1983, a representative of the defendant agency, Central Minnesota Casualty, Inc. (herein referred to as Bosshart) [3] recommended to the Walkers a switch from Yosemite to coverage by the Union Indemnity Company, a surplus lines insurer unauthorized to write insurance in Minnesota unless it, and persons licensed to place insurance with it, comply with the Surplus Lines Insurance Act.

---

2. Minn.R.Civ.App.P. 103.03(h) permits an appeal when a trial court certifies a question as "important and doubtful." By implication, the cited rule requires that the trial judge formulate the "important and doubtful" question. Since in this case the trial judge failed to do so, we have stated the question as we perceive it to be.

3. Bertel Bosshart, also a named defendant, is the owner of Central Minnesota Casualty, Inc. In this opinion when Bosshart is used, the name will include both the individual and corporate respondents.

Respondent Bosshart was aware of two disclosure requirements contained in the Surplus Lines Insurance Act. One required the policy to contain a conspicuous disclosure notice on the face of the policy in red ink informing the insured that the policy was a surplus lines policy, and that should the named insurer become insolvent, loss payment was not guaranteed.[4] The other provision mandates a similar disclosure by the surplus lines agent or broker who is called a licensee—in this case, respondent Bosshart.[5] The Union Indemnity Company policy issued to the Walkers omitted the disclosure stamp required by Minn. Stat. § 60A.207 (1986). Bosshart, likewise, failed to disclose the risk to the Walkers as required by Minn.Stat. § 60A.198, subd. 5 (1986). Moreover, during the course of the transaction, Bosshart purported to act as "broker." In fact, it lacked a license to serve as a surplus lines insurance agent or broker in Minnesota. It did so even though Minn.Stat. § 60A.198, subd. 1 prohibited it from placing coverage with a surplus lines insurer without licensure as provided by the Surplus Lines Insurance Act.

During the policy period, in June 1985 the Shadybrook Supper Club was destroyed by fire. Shortly thereafter, the Union Indemnity Company was placed in receivership under the laws of the State of New York. The Walkers' claim remains unpaid.

The answer to the question certified is governed by the interpretation of the statute permitting the assessment of personal liability against any person who participates in the placement of insurance with an unauthorized and unlicensed insurer.[6] This controversy revolves around the construction of the phrase "other than pursuant to section 60A.20."[7] The appellants contend the disputed phrase modifies the terms involving the actions of an agent in selling an insurance policy. Because surplus lines carriers are unlicensed by the state, do not have a Certificate of Authority, and are not required by law to contribute to the Minnesota Insurance Guaranty Association, appellants conclude that such companies are

4. Minn.Stat. § 60A.207 (1986) provides:
   **POLICIES TO INCLUDE NOTICE.**
   Each policy, cover note, or instrument evidencing surplus lines insurance from an eligible surplus lines insurer which is delivered to an insured or a representative of an insured shall have printed, typed, or stamped in red ink upon its face in not less than 10 point type, the following notice: "THIS INSURANCE IS ISSUED PURSUANT TO THE MINNESOTA SURPLUS LINES INSURANCE ACT. THE INSURER IS AN ELIGIBLE SURPLUS LINES INSURER BUT IS NOT OTHERWISE LICENSED BY THE STATE OF MINNESOTA. IN CASE OF INSOLVENCY, PAYMENT OF CLAIMS IS NOT GUARANTEED." This notice shall not be covered or concealed in any manner.

5. Minn.Stat. § 60A.198, subd. 5 (1986) reads:
   **Disclosures.** Before placement of insurance with an eligible surplus lines insurer, a surplus lines licensee shall inform an insured or the insured's representative that coverage may be placed in conformance with sections 60A.195 to 60A.209 with an insurer not licensed in this state and that payment of loss is not guaranteed in the event of insolvency of the eligible surplus lines insurer.

6. The statute creating this agent's liability is Minn.Stat. § 60A.17, subd. 12 (1986) which in its entirety reads:

**Liability for placing insurance in unauthorized company.** Any person regardless of whether that person is required to be licensed as an insurance agent, who participates in any manner in the sale of any insurance policy or certificate, or any other contract providing benefits, for or on behalf of any company which is required to be but which is not authorized to engage in the business of insurance in this state, *other than pursuant to section 60A.20*, shall be personally liable for all premiums, whether earned or unearned, paid by the insured, and the premiums may be recovered by the insured. In addition, that person shall be personally liable for any loss the insured has sustained or may sustain if the loss is one resulting from a risk or hazard covered in the issued policy, certificate, or contract or which would have been covered if the policy, certificate, or contract had been issued to the purchaser of the insurance. [Emphasis supplied.]

7. Probably through inadvertence, the Revisor of Statutes has neglected to change Minn.Stat. § 60.17, subd. 12 (1986) to reflect the fact that Minn.Stat. §§ 60A.195–.209 (1986) replaced Minn.Stat. § 60A.20. The parties apparently agree that the words "section 60A.20" should be read as "the Surplus Lines Insurance Act."

"unauthorized." While conceding that if the sale of a surplus lines insurance policy complies with the statutory requirements (found in Minn.Stat. §§ 60A.195–.209 (1986)) then the agent or broker is exempt from personal liability, appellants assert that if the sale fails to conform to the Surplus Lines Insurance Act, the legislature intended that personal liability attach to one who participates in its consummation. Therefore, they conclude, that since it clearly appears that the sale of the Union Indemnity Company policy failed to conform to the statute, and that the respondent agency itself, in its participation in the sale, was not only unlicensed to act as agent and broker, but also failed to make the required statutory disclosures, the agency is personally liable to the appellants for their loss.

Bosshart, however, responds contending that the statutory phrase "other than pursuant to section 60A.20" modifies the preceding phrase containing the noun "company." Therefore, it asserts, whether the sale conformed to the requirements of the Surplus Lines Insurance Act would be essentially irrelevant to the issue of agent's personal liability. Because the policy procured by respondent was written by an "eligible surplus lines insurer" (Minn.Stat. § 60A.196(b) (1986)), the respondent claims exemption from the statutory personal liability. In essence, respondent contends that even though an agent or broker ignores or knowingly fails to comply with provisions contained in the Surplus Lines Insurance Act—provisions patently designed for protection of the insurance consuming public by alerting that public to the increased risk in acquiring insurance from an unlicensed and unauthorized insurer—the agent may escape the liability created by Minn.Stat. § 60A.17, subd. 12 (1986).

In making that contention, Bosshart claims that since Minn.Stat. § 645.08(1) (1986), the statute governing construction of statutes, provides that words and phrases are to be "construed according to rules of grammar and according to their common

and approved usage," such construction mandates that courts construe the disputed clause to attach to the noun nearest preceding it to which it logically relates, citing G. Leggett, C. Mead & W. Charvat, *Essentials of Grammar and Composition* 78 (1978). Thus, Bosshart concludes, the phrase modifies "company," the nearest noun preceding the phrase. Contrarily, the appellants opine the clause to be an adverbial one because it "tells how, when, where, why or to what degree," relying on D. Keyser, *Effective English Usage: The Key to Understanding* 119 (1974).

Our task, of course, in resolving the question is ascertainment of the intent of the legislature in enactment of the statutes. We look not only to rules of grammar, but also to the canons of construction of statutory words and phrases in Minn. Stat. § 645.08 (1986) for guidance. After so doing, we conclude respondent's contention must be rejected. First, from a logical standpoint, the construction of the phrase advanced by appellants correctly reflects what appears to us to be the legislative intent of the statute. Acceptance of Bosshart's proposed construction would also entail acceptance of its contention that an eligible surplus lines carrier is an "authorized" carrier under Minnesota insurance law. If that be correct, no reason at all exists for the inclusion of the exclusionary language in Minn.Stat. § 60A.17, subd. 12 (1986) because agents have no personal liability for participating in a sale of a policy by an authorized insurer. The exclusion, "other than pursuant to Minn.Stat. § 60A.20," would under Bosshart's interpretation become superfluous. We conclude the legislature could not have intended that result. The text of the Surplus Lines Act clearly indicates that the legislature was cognizant of the increased risk to Minnesota insurance consumers from the placement of policies with surplus lines insurers.[8] It permitted the placement of such insurance, when necessary, but only if accomplished by strict compliance with the act's legal requirements regulating, pri-

---

8. See also footnote 10 *infra.*

marily, agents and brokers (licensees) but also surplus lines insurers. Agents and brokers are exempt from personal liability only if they comply with the act. Failure to strictly comply with the act's requirements subject them to personal liability.

Additionally, respondent's contention is not sustainable by application of rules of grammar and its construction is "repugnant to the context of the statute." Minn. Stat. § 645.08 (1986). Even assuming arguendo that the disputed phrase modifies a noun, no logical relationship exists between the phrase "other than pursuant to Section 60A.20" and "company." In contrast, appellants' argument that the disputed phrase modifies the term "sale" appears more logical. We agree that the phrase contains more characteristics of an adverbial clause rather than a clause modifying a noun. Additionally, examination of the entire Surplus Lines Insurance Act (Minn. Stat. §§ 60A.195–.209), an act which almost in its entirety addresses the regulation of agents and brokers licensed pursuant to the act,[9] demonstrates a rational relationship between the act and the placement of surplus lines insurance. Thus, we conclude, the rule of construction urged upon us by respondent is inapplicable in this instance.

We likewise conclude that the construction urged upon us by Bosshart is "inconsistent with the manifest intent of the legislature." Minn.Stat. § 645.08 (1986). The act reflects several legislative concerns. One concern, as indicated, was to provide an access, when necessary, to unauthorized insurers. But another equally obvious concern was that surplus lines insurance not be placed without strict and full compliance with the act's specific requirements designed to ensure that the insurance-buying public be fully informed of risks associated with this type of insurance.[10]

That the public policy of the state does not favor the issuance of policies written by unlicensed and unauthorized insurance carriers is evidenced by the prohibition against placement of insurance with a surplus lines carrier if coverage is available from a licensed and authorized insurer. Minn.Stat. § 60A.201 (1986). The statute further demonstrates this policy by providing that surplus lines insurance may be offered only by an agent or broker licensed under the statute to do so. Minn.Stat. § 60A.198, subd. 1 (1986). The act additionally requires strict compliance with the detailed and comprehensive requirements and regulations before an insurance agent or broker can become a licensee. Minn. Stat. §§ 60A.198, subd. 3, 60A.199, 60A.201–.203, 60A.204, subd. 2, 60A.205 (1986).

The legislative concern that there be full disclosure of the risk is manifested by the provision mandating that a notice be affixed to the face of the policy in 10-point type and red lettering, alerting the reader that the insurer is unlicensed and that payment of claims is not guaranteed. Minn. Stat. § 60A.207 (1986). Finally, a licensee, agent or broker must also make a similar disclosure to an insurance customer. Minn.Stat. § 60A.198, subd. 5 (1986). If,

---

**9.** Only Minn.Stat. § 60A.206 and Minn.Stat. § 60A.207 (1986) purport to impose any regulation on surplus lines insurance companies.

**10.** Minn.Stat. § 60A.20, subd. 1 (1980) before its repeal and recodification by 1981 Minn.Laws, ch. 221, § 15 listed some public policy considerations motivating the legislature in originally enacting the Surplus Lines Insurance Act. Though those purposes were omitted from the 1981 recodification, they do provide us with evidence of legislative intent.

**Purpose clause.** Insurance transactions with unauthorized insurers are so affected with a public interest as to require regulation, taxation, supervision and control as provided in this section in order to: protect the citizens of this state in transactions involving the purchase of insurance from insurers not authorized to transact business in this state: provide for the public an orderly, reasonable, and regulated access to insurance from unauthorized insurers, where necessary, through licensed and supervised surplus line agents: protect the revenues of this state; protect regulated authorized insurers from unregulated and unfair competition by unauthorized insurers; and regulate and supervise the procurement from unauthorized insurers in accordance with the laws of this state and Public Law 15 known as the McCarran Act.

after the statutorily obligatory disclosures have been given, the insurance buyer opts to proceed with the placement of insurance with a surplus lines carrier, no reason exists, public policy or otherwise, to hold the agent or broker participating in the placement personally liable.

To hold the agent's personal liability law (Minn.Stat. § 60A.17, subd. 12 (1986)) to be inapplicable in circumstances similar to those existing here would plainly frustrate the legislative intent to afford notice and protection to the insurance consumer, leaving the consumer without any remedy for subsequent loss flowing from a clear violation of statutorily imposed duties. The respondent was not a licensee permitted to place surplus lines insurance. Minn.Stat. § 60A.198, subd. 2 (1986). Nevertheless, it persuaded appellants to switch from a licensed to an unlicensed surplus lines carrier (perhaps a violation of Minn.Stat. § 60A.201 (1986)). It participated in the sale of a policy that did not contain statutorily mandated disclosures (Minn.Stat. § 60A.207 (1986)), and it failed in its statutory duty to make disclosure to the appellant insurance applicants (Minn.Stat. § 60A.198, subd. 5 (1986)).

Since at least early statehood, the public policy of this state has been that agents, brokers or companies engaged in the business of selling insurance be regulated so as to afford adequate protection to the state's insurance-buying public. To that end successive legislatures have required licensure and authorization of out-of-state insurance companies. They have compelled authorized insurers to contribute to and be subject to provisions of the Guaranty Fund designed to protect the public from insurer insolvency. They have prohibited the placement of insurance with unlicensed and unauthorized insurers where comparable coverage is available from a licensed insurer. They have provided for agent and broker personal liability for participating in sales of insurance by unauthorized and unlicensed insurers. They have carved out an exception to this liability by granting an exemption if the sale meets the requirements of the surplus lines laws. The exist-

ence of the exemption is meaningless unless the legislature intended that the safeguards inserted by it in the Surplus Insurance Lines Act for the public's protection are followed.

We conclude not only that appellant's grammatical analysis of the statute is correct, but also that a consideration of the public policy issues involved in the two statutes manifests a legislative intent that an agent who participates in violation of the Surplus Lines Insurance Act (Minn. Stat. §§ 60A.196–.209 (1986)) is not entitled to be exempted from agent's liability under Minn.Stat. § 60A.17, subd. 12 (1986).

Accordingly, we answer the certified question in the negative and remand to the trial court for further proceedings.